Grover, J.
 

 The question whether the plaintiff had an insurable interest in the life of the deceased does not arise in this case. The insurance was upon the life of W. S. Mallory. The policy was procured by him, and he paid the premium therefor, and made the loss payable to the plaintiff (his daughter) or legal representatives. This, in effect, was a policy procured by him upon his own life, and an assignment thereof to the plaintiff.
 
 (Grosvenor
 
 v.
 
 The Atlantic Fire Ins. Co.,
 
 17 N. Y., 391;
 
 Rawls
 
 v.
 
 American Mutual Ins. Co.,
 
 27 N. Y., 282.) There was no error in denying the defendant’s motion for a nonsuit. ISTo ground for such motion was stated, and in such a case the well settled rule is, that there is no error committed by denying it, although there may be á defect in the plaintiff’s proof, if the defect was such that it.might have been supplied if pointed out upon the motion. But there was no such defect. The proof showed that the deceased had been staying at his brother’s at Bridgport, Conn., for about a week; that he left the house on Sunday, and was last seen alive on that day, walking toward a railroad bridge over a culvert, across a stream emptying into the sound, where the waters of the sound set, to some extent, into the land, and up the stream at high tide; that this bridge was used by pedestrians to cross the stream to a considerable extent; that the body of the deceased was found in the pond not far from the bridge, in a few days thereafter. The policy was one embracing cases only where the death was caused by an injury received from an accident. From the facts above it appeared either that the death was caused by such an injury or the suicidal act of the deceased; but the presumption is against the latter. It is contrary to the general con
 
 *55
 
 duct of mankind; it shows gross moral turpitude in a sane person. That it resulted from the former cause was to some extent rendered more probable by the wound upon the head of the deceased, and the break in the corresponding part of his hat. Although this wound might have been made after the deceased was in the water, or while falling in, yet it was for the jury to say how it was caused, and to determine its effect upon the question whether the death was the result of an accidental injury, or whether the deceased had destroyed his own life. The court did not err in charging the jury, that the conversation between the president of the company and the deceased had no bearing upon this particular application. It was proved that the deceased at the time of death was, and for some time previous to procuring the policy had been, a canvasser for applications for insurance with the defendant. That in an interview with the president, the deceased remarked that he could procure a great number of applications in Newark; to which the president in substance replied, that he must be cautious, as the company did not wish to insure insane persons, or persons of habits of intoxication. This evidence was relied upon by the defendant to avoid the policy, in connection with the facts proved, that the deceased, twenty years before making the application, had a severe fever, during which he was more or less insane, but that after recovering therefrom he was sane until three or four years before that time, when he was insane, from what cause did not appear, and was placed for about three months in a retreat for such persons, when he was discharged cured therefrom, from which time to his death he more or less attended to business, was sane or at most the evidence of a want of sanity was so slight during any portion of this period as hardly warranted the submission of any question thereon to the jury. That the deceased did not state to the company upon making application for the policy that he ever had been insane, but did state there were no circumstances which rendered him peculiarly liable to accident. This general conversation with the president some time before the application had no tendency to show a fraud
 
 *56
 
 ulent concealment of material facts upon making the application. There was no evidence tending to show that he was then insane, or that he had been for some time before, and this conversation did not convey to his mind the idea that the company regarded those that a long time before had been insane, as peculiarly liable to accidents. The construction put upon the contract in the charge was correct. That construction was that the terms outward and visible means applied only to injuries not causing death in three months, but to such only as entitled the deceased to certain sums from the company during their continuance as provided by the policy. The part of the charge to the effect that if the wound led to the cause of his death, then it would be an accidental death, could have been understood only in the sense of the wound being produced by an accident, but that this not causing death, did cause him to fall into the water, where he died from drowning, then the death was accidental, so understood, it was entirely correct. The judge was right in charging that if the deceased did not conceal any fact which, in his own mind, was material in making the application the policy was not void.
 
 (Rawls
 
 v.
 
 The American Mutual Life Ins. Co.,
 
 27 N. Y., 282;
 
 Van Lindenan
 
 v.
 
 Desborough,
 
 15th Eng. C. L., 290 ; and
 
 Valton
 
 v.
 
 National Fund Life Ins. Co.,
 
 20 N. Y., 32.) Cases cited by counsel were cases where false answers were given to inquiries made, and have no application to this case. The counsel was mistaken in his exception to the charge, that if the deceased was insane so that he could not know right from wrong, that his death in such a condition was an accident which would entitle him to recover. The judge did not so charge. The judge did charge that if his condition at the time was such that he could not distinguish right from wrong, if it was such that he could not be held in his own mind to know that he was doing an act which would produce death, then he was an involuntary agent, and the result of that involuntary act producing death was an accident. This part of the charge was not excepted to. Hence no question arises thereon for review
 
 *57
 
 by this court. The defendant can sustain no injury from the want of a proper exception, even if right in its law, for the reason that there was no evidence, tending to show that the deceased did not know that keeping his head under water for a sufficient time would cause his death. It was wholly immaterial whether Lawton ever told Johnson that the deceased was insane, or when he told him so. The defendant could not have sustained any injury from this testimony. The judgment appealed must be affirmed with costs.
 

 All concur.
 

 Judgment affirmed.