be granted. It is undisputed that the plaintiff was arrested in a public place, in the city of Buffalo, late in the evening of Thursday; that he was taken to the police station, and there confined, without any warrant and without any process, until the following Monday, when he was permitted to depart. There was no proof of any indignity offered to the plaintiff, and nothing from which it can be inferred that any humiliation was put upon him, except such as would necessarily follow the arrest of a reputable man upon such a charge, and the long detention. Nor can it be said that there were any circumstances of especial pecuniary damage shown. The jury may have found from the evidence, and it must be assumed upon this branch of the motion that they did find, that the arrest was totally unjustifiable, because there was evidence to contradict seriously the testimony of the defendant that he was requested to make any arrest, or that any complaint was made to him that the plaintiff had been guilty of any crime. If they took that view of the case, as they well might, there was good reason why they should give a verdict for considerable damages. The evidence warranted them in saying that the act of the defendant was highhanded and unjustifiable. Where an officer of the law, under those circumstances, arrests a reputable citizen, and confines him for a considerable time, without process, it must rest largely in the discretion of the jury how large a sum they will assess as damages for such an injury. The amount fixed by the jury in this case was probably larger than would have been given by the court, but the jury are the tribunal especially charged with the decision of questions involving the amount of damages, and no court is at liberty to interfere with their decision unless there is a plain abuse of their discretion. The liberty of a citizen is a matter of pretty considerable importance, and it is not easy to say that such a sum as was given here is too great an amount to compensate a man for the arrest and detention to which this plaintiff was subjected. For these reasons I do not feel at liberty to interfere with the decision of the jury as to the amount of damages, and the motion for a new trial must be dismissed. Motion dismissed.

(9 Misc. Rep. 529.)

## BOEHM v. COMMERCIAL ALLIANCE LIFE INS. CO.

(Supreme Court, Special Term, Steuben County. August, 1894.)

1. NEW TRIAL—QUESTIONS NOT PRESENTED ON FIRST TRIAL.
　　Where a motion for a nonsuit in an action on a life insurance policy was made on the ground that material statements by the insured to the medical examiner were false, but it was not then claimed that such statements were warranties, that question will not be considered on a motion by defendant for a new trial.

2. INSURANCE—REPRESENTATIONS OR WARRANTIES.
　　A life insurance policy referred to certain "provisions, conditions, and agreements on the back hereof, which are made a part of this contract." One of the provisions on the back of the policy was that any breach of warranty or untrue statement in the application should avoid the policy, and another was that "the contract of insurance is contained only in this policy and the application therefor (which is part hereof), taken to-

gether." The paper designated as the application, in addition to the formal application, stated only "that the entire contract is contained in said policy and in this application." On the back of the application, under the caption, "Declarations to be Made to the Medical Examiner," were questions and answers which referred to the "foregoing application." *Held*, that such questions and answers were not a part of the application, and therefore the answers were not warranties, but were mere representations.

Action by Caroline L. Boehm against the Commercial Alliance Life Insurance Company on a life insurance policy. A verdict was rendered in favor of plaintiff, and defendant moves for a new trial on a case and exceptions. Denied.

H. G. Danforth, for plaintiff.
Charles F. Miller, for defendant.

RUMSEY, J. Upon this motion the defendant raises but one question, although that is raised in several different ways. The point made by it is that certain statements made by the insured, which will be more particularly referred to hereafter, were warranties, and that, as some of them were not true, there should have been a verdict for the defendant, instead of for the plaintiff. It is very doubtful whether the question sought to be presented was raised upon the trial. At the close of the testimony the defendant moved for the direction of a verdict upon the ground that Dr. Henckell had attended the deceased during the month of February, 1892, as a physician; that on the 4th of March, 1892, the deceased made false answers to certain questions, which were stated; that those statements, being false by him, were material to the company and to their information at the time, and, being falsely represented to the company, the contract did not bind the company thereafter. Also upon the ground that: "Subsequent to the issuing of the policy and entering into this contract with the company, the deceased was attended by a physician throughout the year. Since the making of the contract he had been attended by Dr. Henckell through the summer. That the application for the reinstatement amounts to a representation that the conditions are the same as when first issued." Also that no cause of action is made out upon the proofs. It will be noticed that this does not raise the question that the statements referred to were warranties, but asks the court to hold that there shall be a nonsuit for the reason that the statements were false and were material, and for that reason did not bind the company. It was not suggested by the counsel in that motion that the statements made were or could be called warranties. As a matter of fact that particular part of the policy which is now relied upon as making them warranties was not referred to, and the attention of the court was not called to it. It is said by the counsel upon this motion that it was not necessary to call the attention of the court to that part of the policy which raises the material question in this case, because it is claimed to constitute a warranty. This claim, if seriously made, cannot for an instant be sustained. It is the duty of the counsel, not only to present to the court all the points upon which they rely, but to

call the attention of the court fairly and openly to the facts which are relied upon as establishing their propositions. Any other course would be a failure of that good faith which counsel, by virtue of their office, are expected to exercise towards the court in which they practice. It is not suggested here that there was any bad faith on the part of counsel for the defendant in the trial of this action. It is quite probable that the clause in question was not brought to his notice. It certainly was not in that part of the policy where anybody would have been likely to look for it, and it would not be brought to his notice, or to the notice of any one else, unless attention was particularly called to it. The point that these answers were warranties was not made upon the motion for a nonsuit; neither was it made at the close of the charge. The jury were particularly told by the court that these answers were not made warranties by the company; that they might have been made warranties, had the company seen fit to do so, but the company had not done it. To this portion of the charge no exception was taken by counsel. The only exception upon that point of the case was that the counsel objected to the submission to the jury of the question of the materiality of the representations. There was no suggestion at that time in the case that it was claimed that the answers were warranties. On the contrary, the point made was that they were material as a question of law, and that it was error to submit to the jury the question whether or not they were material. For these reasons the point which is sought to be made here cannot now be raised in this way.

But if the defendant were in a position to raise the question, I am quite clear that he is entirely wrong in his construction of this contract, and that the statements which are sought to be incorporated into this policy were not incorporated into it by the contract between the parties, and therefore they are not warranties, but only representations. The form of the contract is quite remarkable. The policy, upon its face, does not incorporate the application into it, nor does it say that the application is a part of the policy. It contains, however, the following clause: That the Commercial Alliance Life Insurance Company, in consideration of, etc., does hereby promise to pay a certain sum to Caroline L. Boehm, or such other person as the insured may from time to time designate, with the written consent of the company, "upon the provisions, conditions, and agreements on the back hereof, which are made a part of this contract." Turning now to the provisions, conditions, and agreements referred to, we find under the head of "Incontestability" this provision: "Any other breach of warranty or untrue or incomplete statement made in the application for this policy, will render this contract null and void," etc. Under the head of "Payment of Premiums" we find this provision: "The contract of insurance is contained only in this policy and the application therefor (which is part hereof), taken together." It will be noticed in these provisions that the thing which is a part of the policy is the application, and that any breach of warranty or incomplete or untrue statement which will render

the policy null and void, according to the agreement, is that made in the application, and not any other one. Referring to what is produced here as the application, we find that it is contained on the first page of a certain paper. It commences with the words, "I hereby apply to the Commercial Alliance Life Insurance Company, of New York, for a policy," etc. It is signed by the insured, Ferdinand J. Boehm, and dated on the 4th day of March, 1892. It contains, above his signature, this statement: "That the entire contract is contained in said policy and in this application." This paper is Form L, as appears in the abstract. The next paper, which is on the back of the application, and is entitled Form G in the medical service, is called by the company, "Declarations to be Made to the Medical Examiner," etc. It is signed by the insured, as is the application, and he states, above his signature, that he is the person upon whose life the insurance is proposed, and who has signed "the foregoing application." Those are the only places in which the application is referred to. The paper signed by the insured, and called the "application," is complete and perfect in itself. It does not contain any of the answers which are complained of by the defendant here. Those answers are contained in another paper, with a different title, which does not purport to be a part of the first paper, and which refers to the application as a "foregoing" paper, from which it is fairly to be inferred that the application is something different from the answers made to the medical examiner.

There is no doubt about the rule that no statement made to an insurance company as the basis of a contract of insurance can be regarded as a warranty unless the paper in which it is made is by necessary inference made a part of the contract. Insurance Co. v. Cotheal, 7 Wend. 72; Owens v. Insurance Co., 56 N. Y. 565. It was held in that case that, unless the paper in which the statements were made was referred to and adopted as a part of the contract, such statements did not become warranties, but were simply representations. It is also thoroughly settled that all the provisions of a policy of insurance which are sought to be relied upon to produce a forfeiture are to be construed strictly against the company. This rule is so thoroughly settled that no citation of authority is necessary to establish it. It is founded upon a wise policy, because the insurance companies make their own contracts. They insert in them just what provisions and conditions they see fit, and for that reason it is assumed that they have made their contracts as strongly in their own favor as it is possible for them to do. As is said by Judge Peckham: In these cases a strict construction must be insisted upon, and the contract resulting in a forfeiture cannot be extended beyond the strict and literal meaning of the words used. In cases where the meaning is not entirely plain, and where it is capable of two constructions, one involving a forfeiture and the other being fair and reasonable and supporting the obligation of the policy against the insurer, that construction is preferred by the courts which does not involve the forfeiture, not only because it is not so harsh, but also because, if the language

is doubtful, it is that employed by the insurer, and should be taken most strongly against him.    Holly v. Insurance Co., 105 N. Y. 437, 441, 442, 11 N. E. 507.    It is said by Judge Cowen in the case of Insurance Co. v. Cotheal, 7 Wend. 72, that the doctrine of warranty in the law of insurance is one of great rigor, and for that reason it is never created by construction, and it must appear in express terms, or must necessarily result from the nature of the contract.

The first thing to be noticed in this case is that the application is not made a part of the policy by anything contained in the policy itself, strictly speaking.    It only can be said to be incorporated in the policy as part of it by holding that because the provisions, conditions, and agreements on the back of it are made a part of the policy, the things which in those conditions, provisions, and agreements are made a part of the policy are equally incorporated in it as if it had been done by express words on the face of the policy itself.    In other words, if the insured wished to learn what constituted his policy, he cannot do so by reading the policy, but he must go to the conditions and provisions on the back of it, and from them he must go to another paper which is referred to in those conditions.    When a company has made its policy in that way, it is not too hard a construction of such a policy to apply the rule which Judge Peckham applied in the case above cited, and confine it to the strict and natural meaning of the words used. After running down the several references, we find that the thing which is made a part of this policy is the application; and not only that, but we find that the contract is contained only in the policy and application, and that those two papers contain the whole of it.    So we are brought to inquire, what is the application?    We find that the company itself has stated what the application is. . It has presented to the insured a paper which it has named the application.    It has required him to sign and date it, and it has made him state in it that the entire contract is contained in the policy and in "this application."    It is quite true that it has also required him to answer certain questions, but there is nothing in the application which incorporates those answers into it, and at the bottom of those very questions we find that the company has referred to the application as another paper, and not included as a part of the declarations which they have caused to be made. It is quite clear to my mind that the only paper which can be said to be referred to in this policy is that which the company itself has called the application, which is signed by the insured, and which it has made him agree shall be part of the contract.    To hold that, when it has expressly made one paper a part of the contract, it shall be permitted to incorporate into that paper a set of answers and questions not referred to in it, some of which are material, and some of which are not, would be to perpetrate a great fraud upon any person who made an application for insurance.    These questions which are sought to be put into the application are required to be written by the medical examiner.    There are nearly 40 different answers, some of which are necessarily not within the personal knowledge of the applicant, many of which,

as every applicant for insurance knows, it is utterly impossible to answer with entire accuracy. Yet if they are made a part of this policy, they are all warranties, and every one of them becomes as material to the contract as the most important piece of information which is given to the company, and the falsity of any one, even the least important, will enable the company to avoid the contract. Le Roy v. Insurance Co., 39 N. Y. 90; Dwight v. Insurance Co., 103 N. Y. 341, 8 N. E. 654. For this reason it has been held that all statements made in the paper upon which the contract is sought by the insured are to be construed as representations, rather than warranties, in all cases where such construction is possible. Daniels v. Insurance Co., 12 Cush. 416. If the company desired these declarations to the medical examiner to be incorporated in the contract, it would have been very easy to say so. Where that is sought to be done in some policies they are especially referred to. It would have been easy in this case for the company to require Boehm to say that the entire contract was contained in the policy and in the application and in the declarations to the medical examiner, if it wanted them to be made a part of the policy. As it has not done so, it would violate one of the first canons of construction to enlarge the meaning of the word "application" for the purpose of introducing into the policy something which was not contained in the application so that the company might insist upon a forfeiture. There is no question, therefore, that the application which by this agreement is made a part of the contract, is that paper, and that paper only, which is called an "application," and which is signed as such by the insured. It is not claimed that any of the answers in the application are false. The false answers are those which are made in the declarations to the medical examiner, and, as we have seen, are no part of the application. It is quite true that in the application the insured is made to say that the answers to be made to the medical examiner shall be made the basis of the contract, and he warrants the same to be fully complete and true. That provision, however, does not make them part of the application, nor does it give them any further weight than they would have had without it. If the insured had stipulated that any falsity of those statements would avoid the contract, a different question might perhaps be presented, but the only untrue or incomplete statements which will avoid the contract are those made in the application.

The questions, the false answers of which are relied upon as a defense, are as follows: "Have you ever been seriously ill?" to which the answer is, "No." "Name and residence of your usual medical attendant," to which the answer was, "Has none." "Have you consulted any other physician? If so, when, and for what?" to which the answer was, "No." These statements were made on the 4th day of March, 1892. It appeared by the testimony, and was not disputed, that at four different times before the 4th of March the insured was at the office of Dr. Henckell, who examined him, and prescribed for him. These four dates were on the 4th of February, 13th of February, 24th of February, and the 2d of March.

It does not appear accurately either with what disease Boehm suffered, or what the doctor told him about it. It did appear, however, that during all the time previous to the application for insurance the man was at work, driving his hack every day, and that at the times he visited the doctor before the application was made he drove to the doctor's office upon his hack, or went there on foot. It did not appear anywhere in the testimony that he had, or ever had had, the attendance of any physician except Dr. Henckell, who prescribed for him on the four occasions mentioned above. No other physician had ever been called by him or consulted by him, so far as appears. Upon this state of the testimony the question was submitted to the jury whether the defendant had satisfied them that Boehm had ever been seriously ill, or whether he had any usual medical attendant, or whether the representation that he had never consulted a physician was material. The defendant excepted to the submission of the question to the jury of the materiality of the representations. If the court was correct in holding that these answers were representations, and not warranties, then there can be no question that their materiality must be submitted to the jury. Insurance Co. v. Deale, 18 Md. 26; Clark v. Insurance Co., 40 N. H. 333. The counsel also excepted to the charge of the court as to what usually constituted regular medical attendance, and to the charge of the court as to what constitutes serious illness. Nothing was said in the brief as to these exceptions, and it is not supposed that there was any valid objection to that part of the charge.

It appeared in the case that in the month of November, 1892, this policy was permitted to lapse, and that an application was made on the 18th of November, 1892, for a reinstatement. In this application it was stated that Boehm was then in sound physical and mental condition; that he had not been sick; and the parties agreed that that application should form part of the contract of insurance, together with the original application. It may be conceded, for the purposes of this motion, that from the time the policy was reinstated the application for reinstatement became a part of it, and that a statement that Boehm had not been sick from the time of the first making of the policy down to the 18th day of November was a warranty. That being so, the question then arose whether there was a breach of that warranty. The testimony showed that after the policy had been granted, and on the 15th and 21st of August, 1892, Boehm was at the office of Dr. Henckell, who then prescribed for him. What was the nature of the indisposition from which he suffered, if any, does not appear. Dr. Henckell made this statement: "I did not at any time, before this 26th of November, 1892, attend him at his house; always at my office, 116 Sophia street. During this time he was ill." Precisely what time was referred to by that answer does not appear. It was claimed upon the motion for a nonsuit that the application for a reinstatement amounted to a representation that the conditions were the same as when the policy was first issued. The precise meaning of this claim is not perceived, and it is quite doubt-

ful just what point was intended to be made by it.   It was not suggested to the court at that time that the statement for the application of reinstatement was a warranty, nor that the statements made in that application were in themselves false.   No such point was made, nor was any such reason suggested, arising out of the application for reinstatement, why a verdict should be ordered. The court submitted to the jury the question whether that statement of Boehm, in the application for reinstatement, that he had not been sick, was false, and also the question whether, if false, it was a representation as to a material fact.   To this act of the court no exception was taken, and no request was made to the court to submit any question to the jury based upon this reinstatement. For that reason the defendant is not now in a situation to raise any question upon the charge of the court in that behalf.   It is quite true that the case states that the defendant's counsel objected to the submission to the jury of the question of materiality of the representations which are mentioned in the charge of the court, but, if that objection was intended for an exception to the charge of the court in any respect, it was entirely too broad.   As we have seen, the materiality of the representations contained in the declarations to the medical examiner was properly submitted to the jury.   This objection included the materiality of those representations, as well as the representations stated in the application for reinstatement.   It is well settled that a single exception to several distinct propositions in the charge is of no avail if any of them is good.   Haggart v. Morgan, 5 N. Y. 422.   Within this rule the sweeping objection of counsel to submission to the jury of the materiality of any of the representations is of no avail, although the submission of one of them might not have been proper.   There was certainly no error in that portion of the charge of the court which submitted to the jury the question whether Boehm had been sick before the 18th of November.   It was undisputed upon the testimony that up to the time, and for some time afterwards, he had been continually attending to his business, which was that of a hackman, and none of his neighbors knew or had any information that he was in any way out of health.   The most that could be said was that while he was engaged in his daily occupation he consulted Dr. Henckell either for a cold or for an indigestion or for something of that kind.   There is not one particle of evidence in this case that his illness, whatever it was, was anything more than an ordinary cold, or a slight indigestion, which might have been the effect of a cold.   Whether an ailment of that kind was an illness within the meaning of this statement was clearly a question for the jury.   It surely cannot be that a man who takes out a policy of life insurance must, at his peril, recollect accurately every occasion upon which he has suffered from a cold or a slight attack of indigestion, and it is equally clear that the question whether such an ailment can be said to make a man sick is to be decided by the jury, and cannot be passed upon as a question of law by the court.   Indeed, there is not one particle of evidence in this case which would warrant the defendant in interposing this defense.

But with regard to the submission to the jury of the question whether he had been sick before the 18th day of November, it is sufficient to say that no exception was taken, and no question based upon that ruling is raised in this case. The motion for a new trial must be denied, with costs.

Motion denied, with costs.