### SINGLETON v. PRUDENTIAL INS. CO. OF AMERICA.

(Supreme Court, Appellate Division, Third Department. December 2, 1896.)

1. INSURANCE—MISREPRESENTATIONS AS TO AGE.

    A provision in the policy that, "in case the age of the insured shall have been understated by mistake, the sum insured will be reduced to the amount the premium would pay for at the true age," precludes the insurance company from asserting the understatement as a breach of warranty, and its remedy is to ask that the sum insured be reduced accordingly.

2. SAME—APPLICATION FILLED IN BY AGENT—NOTICE TO AGENT.

    Where the application was filled up by the agent of the company, who knew that insured had a wife living, a statement in the application that insured was single, claimed by the agent to have been written by him by mistake, cannot be raised as a defense to an action on the policy

3. SAME.

    Where said application stated that insured's trade was that of "blacksmith," but the agent knew that he had not pursued said trade for several years, and the medical examiner certified the insured's occupation correctly, the jury was justified in finding that the company was truly advised as to insured's occupation before issuing the policy.

4. SAME.

    To the question whether insured had ever been rejected by any insurance company, insured told the agent that he had made application to another company, but did not know what had become of it. The agent wrote "No" as the answer. Defendant's assistant superintendent knew that said application had been rejected. *Held*, that defendant knew, when it issued the policy, that insured had been rejected by the other company.

5. SAME—RATIFICATION OF POLICY.

    An insurance company will be held to have ratified an insurance policy, claimed to have been procured by false representations in the application,

when it appears that the assignee of the policy, a creditor of insured, on paying premiums, asked to have them refunded if the policy was not all right, and that thereafter the premiums were regularly accepted from said assignee.

Appeal from trial term, Saratoga county.

Action by Annie Singleton against the Prudential Insurance Company of America. From a judgment in favor of plaintiff, and from an order denying motion for new trial, defendant appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Henry J. McCormick, for appellant.
Thomas O'Connor, for respondent.

LANDON, J. The action was to recover upon a policy of life insurance issued by defendant to John Clute, insuring his life in the sum of $500. The defense was the falsity of the representations made by the insured in his application, and in response to the questions of the defendant's medical examiner. The policy makes the application a part of the contract, and provides that, if the representations in the application are not true, the policy shall be void. The application declares and warrants that the answers to the questions therein, as well as those made or to be made to the medical examiner, are or shall be complete and true, and that said answers shall form the basis of the contract of insurance. The portion of the medical examination signed by the insured contained this clause: "I agree that the answers to the foregoing questions shall form a part of the contract of insurance applied for." The evidence on the part of the defendant tended to show that the answers of the insured as written in the application were false in respect to his age, his being married or single, the rejection of his application for insurance by another company, and also as to his occupation. Also that his answers, as written in the medical examination, were false in respect to his age, in denying receiving any serious injury or undergoing surgical treatment, in denying having any mental or physical defect or infirmity, in denying the rejection of his application for insurance by any other company, and in denying having been attended.by a physician for any complaint. John Clute, the insured, resided in Waterford. He was feeble in intellect, and could not read or write. The canvassing agent of the defendant, Mr. Dunn, also resided in Waterford, and knew Clute. The assistant superintendent of defendant, Mr. Geguear, resided at Cohoes, near Waterford. They both understood that Clute had applied for insurance in the Metropolitan Insurance Company, and that his application had been rejected by that company upon the report of the medical examiner. They consulted together in regard to writing an application in behalf of Clute, and the assistant superintendent directed the canvassing agent to write it. Dunn, the agent, called upon Clute, and asked him if he wanted to be insured, and, upon Clute's answering "Yes," Dunn asked him questions, and inserted answers in the printed applica-

tion blank. Asked his age, Clute answered that he was 54, to the best of his knowledge. In fact, he was about seven years older. It is provided in the policy that, "in case that the age of the insured shall have been understated by mistake, the sum insured will be reduced to the amount the premium would pay for at the true age." This provision makes it clear that a mistaken understatement of age is not to be construed as a fatal breach of warranty. There is no evidence that Clute did not answer according to the best of his knowledge, and the remedy of the defendant in this respect was to ask that the sum insured be reduced according to the terms of the policy. Clute had a wife living, and Dunn knew it. It does not appear that Dunn asked Clute whether he was married or single. Dunn testified that in writing the answer "Single" he made a mistake. For this mistake of defendant's agent, Clute, to whom the answers were not read, was not responsible. O'Brien v. Society, 117 N. Y. 310, 22 N. E. 954. Clute, in answering as to his occupation, said, "My trade is a blacksmith," and "blacksmith" was written in the application. He was a blacksmith by trade, but had not pursued that occupation for several years, but was acting as a servant in and about a liquor store, but not actively. These facts Dunn knew. The medical examiner certified Clute's present occupation to be, "General handy man in wholesale liquor store for many years." We think the jury were justified in finding that the company were truly advised as to Clute's occupation before they issued the policy. Respecting the question, "Have you ever been rejected by this or any other company?" Clute told the defendant's agent, Dunn, that he had made application with the agent of the Metropolitan, but he did not know what had become of it. It was not shown that Clute was ever told that the application had been rejected. Dunn knew that it had been rejected, but he wrote "No" as the answer to the question, and he did not tell Clute what he wrote. Dunn testified that he told Clute that if he answered "Yes" he could not get the insurance. Geguear, the assistant superintendent, knew that the application had been rejected. Upon this evidence the jury could find that the defendant knew, when it issued the policy, that Clute had been rejected by the Metropolitan Company; also, in connection with Clute's weakness of mind, they could further find that the false answer was Dunn's, and not Clute's.

This application, when completed, was handed by Dunn to the assistant superintendent in Cohoes, and thereupon the general agent of defendant ordered a medical examination by Dr. Ross, and handed him the application already made, upon which was printed the blank for the medical examination. To the question, "When were you last attended by a physician?" the answer "Never" was written. "For what complaint?" the answer was "None." Dr. Stubbs testified that he attended him once, about four years before, at the house of Mr. Higgins, with whom Clute then lived; but for what illness, if any, the doctor did not remember. Mr. and Mrs. Higgins both testified that they never knew of the doctor's attendance. The jury might well find that this single attendance by the

doctor and the occasion for it were not important enough to be remembered, and that, if the answers were not true, they were not such misrepresentations as came within the meaning of the policy. Cushman v. Insurance Co., 70 N. Y. 72; Boehm v. Insurance Co., 9 Misc. Rep. 529, 30 N. Y. Supp. 660, affirmed 35 N. Y. Supp. 1103. To the question, "Have you received any serious injury?" the answer "No" was written. The facts were that he had been in the army, and while there had received a gunshot wound in his head, which left a scar and depression in his forehead, plainly visible when his hat was off, but covered when he wore his hat. To the question, "Have you any physical or mental defect or infirmity?" the answer "No" was written. The defendant points to the gunshot wound as the physical defect, and to Clute's weak mind—probably the result of the wound—as the mental defect. Whether the medical examiner saw the scar upon Clute's forehead does not appear. As Dunn was present, and knew all about it, and was desirous that Clute should pass a favorable medical examination, it is quite probable that Clute's hat covered the scar. The physician must have noticed his mental state. He tesified that when he went into the house where Clute was, in order to make his examination, and inquired for him, "Mr. Singleton showed him to me." Dunn testified that on the same occasion he "pointed" him out to the doctor. From the fact that the doctor found him to be in apparently good physical health, and the fact that Clute was thus exhibited to him, the jury may have inferred that the doctor must have observed his mental state. But Dunn, and as the jury might find, Geguear, the assistant superintendent, knew the facts. The jury were authorized to find that both agreed that Dunn should prepare the application in an acceptable form, and that he should, as he did, recommend its acceptance to the company. The only difficulty was the medical examination. Dunn stood by when that was prepared, and it was made in an acceptable form. Their motive, as the testimony shows, was to do more business. Whether they meant that the false answers should ultimately exonerate their company, we need not inquire. There is no evidence to contradict the finding that their knowledge was the knowledge of the defendant.

The court was not asked to submit the question to the jury whether Clute conspired with them to defraud the defendant. The absurdity of holding Clute to an exact definition of his mental state was, no doubt, apparent; nor was it surprising that long after his recovery from a wound he should, in response to a question which he probably did not understand, fail to declare that he had ever received it. As the facts in question go to the inception of the contract, and as the defendant was chargeable with knowledge of the facts before it issued its contract and took the money for it, it cannot now defeat it by asserting that Clute did not truly state them. It knew then in that respect what it knows now. Wood v. Insurance Co., 149 N. Y. 382, 44 N. E. 80.

There is another answer to the defendant's contention. In June,

1894, Clute assigned the policy to his creditor, John Singleton, the assignor of the plaintiff. In the same month Mr. Kennedy, then general superintendent of the defendant for the Cohoes agency, called upon Singleton, and stated that he had known Clute for years, that he was over age, "a drunken old bum," asked if Clute knew that he was insured, called the policy a speculative insurance, and said Clute was not insured in person. To this Singleton answered, "Refund my money back to me, and I will go no further." In the same month Beckett, an inspector from the home office of defendant, made an investigation respecting the policy, and as the result marked "O. K. Beckett" upon the receipt book held by Singleton for the premiums. Afterwards Singleton tendered Kennedy, the superintendent, payment of the dues upon the policy, at the same time saying to him, "If that policy is not all right, don't accept any more of my money, but give me my money back, for I don't want to bother with a policy that is not all right." Kennedy replied, "As long as the company is willing to receive your money, I shall take it," and he took it. Thereafter the collecting agents called upon Singleton for the regular dues, and he paid them. Upon these facts the finding of the jury that the company ratified the policy with full knowledge of the facts is amply justified. Titus v. Insurance Co., 81 N. Y. 410; Pratt v. Insurance Co., 130 N. Y. 206, 29 N. E. 117. There was no substantial contradiction in the evidence. The exceptions, other than those disposed of above, do not need comment.

Judgment and order affirmed, with costs. All concur.