Appeal from municipal court, borough of Manhattan, Third district.

Action by George W. Mansfield against Ernest Strauss. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before TRUAX, P. J., and SCOTT and DUGRO, JJ.

Lenney & Donovan, for appellant.

Corn & Lazansky, for respondent.

PER CURIAM. The plaintiff, in a written complaint, alleged that on a given date the International Society, his assignor, duly sold and delivered to defendant certain books, which were reasonably worth, and said defendant agreed to pay therefor, the sum of $45. Unquestionably, this language imported an absolute sale. Hadley v. Bordo, 62 Vt. 285, 19 Atl. 476. To support his declaration, plaintiff read in evidence a contract signed by defendant, in which he requested that the books be sent him, and agreed to pay $2.25 per volume, as follows: "$2 cash with this order, and $2 the first of each succeeding month thereafter, until the full amount has been paid. Title in said books not to pass to me until paid for in full." This contract showed a conditional sale, and did not support the declaration. Hadley v. Bordo, supra. There was no sale in a strict sense, for it is essential to a sale that there should be a transfer of the absolute or general property in the thing sold. A mere transfer of a special property—which is the utmost that has been shown in this case—is not a sale of the thing. Benj. Sales, § 1. There is not, in the present case, a provision that upon the nonpayment of an installment all future installments should become due. The proof did not sustain the allegations of the complaint, and upon the pleadings and proof the plaintiff was not entitled to recover.

Judgment affirmed, with costs.

---

(58 App. Div. 137.)

LOUIS v. CONNECTICUT MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, First Department. February 15, 1901.)

1. INSURANCE—PROOF OF LOSS—CORONER'S INQUEST.
 Where proofs of death as forwarded were complete before an inquest was asked for, and the papers on the inquest were sent to the company, on its request, by plaintiff's counsel, as a matter of accommodation, such papers were not a part of the proofs of death, so as to be admissible against plaintiff in an action on the policy.

2. SAME—CONCLUSIVENESS OF INQUEST.
 Proceedings on a coroner's inquest are not admissible against plaintiff in an action on a life policy, plaintiff not being a party to the proceedings, and having nothing to do with the inquest.

3. SAME—APPLICATION—FALSITY OF ANSWERS—QUESTION FOR JURY.
 It cannot be said as matter of law that a false answer in an application for life insurance to the question whether applicant had been attended by a physician, on which no defense was predicated, when taken in connection with a false answer to a question whether there was any fact relating to the physical condition, personal or family history of applicant, which the company ought to know, shows a breach of warranty as to the latter question, the only question being whether the answer to the latter question was false in such a sense that it made the policy invalid, and

hence the effect of the answer to the first question on the answer to the latter was for the jury.

**4. SAME—OPINION OF APPLICANT.**

A question whether there was any fact not stated in applicant's previous answers which the company ought to know calls only for his opinion, and, conceding the negative answer thereto is a warranty, the only effect to be given to it is that, in his opinion, he thought there was no such fact.

**5. SAME—WARRANTIES AND REPRESENTATIONS.**

A question calling for the opinion of an applicant for life insurance is a representation, and not a warranty.

**6. SAME—QUESTION FOR JURY.**

The question of the materiality of a false answer to a question in an application for life insurance, not a warranty, is for the jury.

**7. SAME—MATERIALITY.**

Where an applicant for insurance is asked the question whether there was any fact not stated in his previous answers which the company ought to know, it is left to his judgment to decide whether the fact asked for is material, and, though the fact may be material, a false answer is not sufficient to avoid the policy, unless the materiality is known to him. All that he is called on to do is to determine the question of its materiality fairly and honestly.

**8. SAME—EVIDENCE—ADMISSIBILITY.**

In an action on a life policy it is incompetent to prove that the fact that applicant had attempted to commit suicide would have been deemed material in passing on the application, and that the company would not have issued the policy had it known such fact.

**9. SAME.**

In an action on a life policy it is incompetent to prove a custom among insurance companies with regard to accepting applications by persons who had attempted suicide.

**10. SAME—PLEADING—AMENDMENT—DISCRETION OF COURT.**

Whether the court will permit defendant to amend his answer so as to enable him to have the affirmative of the issue is within its discretion.

**11. SAME.**

Permitting defendant, sued on a life policy, to amend its answer by setting up that the policy is invalid because of false answers to certain questions, the evidence which had been admitted bearing on that matter being complete on the issue raised by the allegations with respect to other questions, is within the court's discretion.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Jennie Louis against the Connecticut Mutual Life Insurance Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

John M. Bowers, for appellant.
Gibson Putzel, for respondent.

RUMSEY, J. The action was brought to recover upon a policy of insurance issued on the 20th of June, 1895, upon the life of Joseph H. Louis, the husband of the plaintiff, for her benefit. The application was made a part of the policy. The policy contained a provision that the company did not assume the risk of self-destruction except upon satisfactory proof that the insured was so far insane as to destroy his responsibility therefor; and, in case of death for that cause, the policy should become null and void. It was alleged in the answer

that the policy was void because the death of Louis, which took place on the 16th of April, 1896, was caused by suicide. Proof was given by each party as to that fact, and it was submitted to the jury, who found a verdict in favor of the plaintiff in answer to a question. The death of Louis took place in the city of Philadelphia. A coroner's inquest was held upon his body, the result of which was a finding that his death was caused by suicide from some unknown poison. The papers and proceedings upon that inquest were offered in evidence, but they were excluded, and one of the questions presented is as to the correctness of the rulings excluding them. The inquest was taken in the state of Pennsylvania. The proceedings were sent by the counsel for the plaintiff to the insurance company, upon its request, after the proofs of loss had been forwarded and received. It is claimed that they are competent because they were forwarded as part of the proofs of loss. It is quite evident, however, that that is not so. The proofs of loss as forwarded were complete before the inquest was asked for, and when the papers upon the inquest were asked for they were sent to the company by the plaintiff's counsel purely as a matter of accommodation. They were no part of the proofs of loss, and could not be received as such; and, if they had been, the facts that appeared in them would not have been competent evidence, except perhaps of the fact that a coroner's inquest had been had. But the findings of the inquest were not competent evidence in this case. It was res inter alios acta. The plaintiff was not a party to the proceedings, and had nothing to do with the inquest before the coroner's jury, and for that reason, if for no other, they were incompetent, and could not be received. In the case of Goldschmidt v. Insurance Co., 102 N. Y. 486, 7 N. E. 408, there is a discussion of the question whether such proceedings were competent evidence as against the insured, and the court came to the conclusion that they are not. The argument in that case is complete, and the question does not call for further consideration. Buffalo Loan, Trust, etc., Co. v. Knights Templar & Masonic Mut. Aid Ass'n, 126 N. Y. 450, 27 N. E. 942.

Among the large number of questions in the application presented to Louis was the following: "Is there any fact relating to your physical condition, personal or family history, or habits, which has not been stated in the answers to the foregoing questions, and with which the company ought to be acquainted?" to which the answer was "No." It is alleged that the answer to this question was false, and that, if the true answer had been given to it, the defendant would not have issued the policy to Louis, and that the false answer was a suppression of a material fact which rendered the policy void. The facts were as follows: It was discovered in the early part of 1893 that Louis had been engaged in systematic larceny from his employers, and had attempted to conceal that fact by forgeries. When the discovery was made, Louis made a determined and almost successful attempt to commit suicide. As a result of that attempt, he was found unconscious. A physician was called, and after considerable effort he was restored to consciousness. These facts were not disputed upon the trial. There appeared, however, in the

application, a series of questions marked ."9," asking for information as to when he had consulted with or been attended by a physician or surgeon during the 10 years before the application was made, and the names and residences of those physicians, to which he .answered that he had been attended for only trivial complaints; and in answer to the question for the names of the physicians he said he had no use for one. It is not disputed that these answers were false, because he had been attended by a physician at the time of his attempted suicide, but no defense based upon those false answers was set up. The learned counsel for the defendant insists, however, that the jury should have been charged that the falsity of those answers should be considered by them with the falsity of the answer to question No. 11, above, and that, as a result, it was necessary to say as a matter of law that the answer to No. 11, being false, was a breach of the warranty contained in the application, and that for that reason the policy was void. It is quite true that the answers to the series of questions marked "9" were matters for the consideration of the jury, and the court so charged at the request of the defendant; but, although those answers were false, yet it cannot be inferred for that reason, as insisted by the appellant's counsel, that there was a breach of the warranty in the answer to question No. 11, and that, therefore, as a matter of law, the policy was void. The question presented is not what was the effect upon the policy of the answers to question 9, because no claim of the invalidity of the policy because of those answers was set up. The only question which can be considered here is whether the answer to question No. 11 was false in such a sense that it made the policy invalid. Warranties in policies of insurance must be strictly construed, and are never to be extended to include anything not necessarily implied in their terms. Dilleber v. Insurance Co., 69 N. Y. 256. While it is true that by the express terms of this policy the answers in the application are made warranties, yet, under the rule declared in the case just cited, when it is sought to make a warranty of the answer to question 11, we must examine the question to see just exactly what it was that Louis said when he made the answer. He was not asked for any fact. He was simply asked whether there was any fact not stated in the answers to the previous questions with which the company should be made acquainted. That called only for his opinion, and, construing the question as a warranty, the only effect that should be given to it is that, in his opinion, he thought there was no such fact. If, therefore, his notion upon that subject was correct, and he believed that there was nothing in his history not told in the previous answers which was material for the company to know, then, so far as that answer was concerned, the warranty was fulfilled. But a question of this kind, calling for the opinion of the insured, is to be construed not as a warranty, but as a representation. Ames v. Insurance Co., 40 App. Div. 465, 58 N. Y. Supp. 244; Dilleber v. Insurance Co., supra; Moulor v. Insurance Co., 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447. Within the rule laid down in these cases it must be held that this answer was a representation, and not a warranty. When one is asked as

to a fact the truth of which is not, by the terms of the policy, made a warranty, the policy will not be avoided although that fact be untruthfully stated, unless that fact is material; and the question of its materiality in such a case is always to be determined by the jury. Boehm v. Insurance Co., 9 Misc. Rep. 529, 538, 30 N. Y. Supp. 660, affirmed in 86 Hun, 617, 35 N. Y. Supp. 1103. But it is not sufficient in all cases that the representations should be false, and should be material, to avoid the policy. If the insured is asked directly for a fact, and he answers falsely, then undoubtedly the policy would be void if the fact was material, whether the insured made his false answer innocently or not. But when it is left to the insured to decide whether the fact asked for is one which is material, as is the case here, then, although that fact may be material, a false answer is not sufficient to avoid the policy, unless, in addition, it is made to appear that the materiality is known to the insured. This question was expressly decided in the case of Mallery v. Insurance Co., 47 N. Y. 52. The learned justice so instructed the jury, but he also said to them that it was for them to say whether the answer to the eleventh interrogatory was honestly given by Louis, or whether it was answered in the way it was with the intent of concealing from the insurance company the fact that he had attempted to commit suicide. In that charge, we think, there was no error. The question for Louis was whether, in his judgment, the fact asked for was one which the company ought to have known. All that he was called upon to do was to determine that question fairly and honestly. If he did that, then, although he came to a wrong conclusion, the policy is still valid; and that is the point determined in Mallery v. Insurance Co., supra. Either he honestly thought that the fact of his attempted suicide was not material, or, thinking that it was material, he concealed it with the intent that the company should know nothing about it. If, thinking that it was material, he concealed it for that purpose, then that was a fraudulent concealment, because his purpose was to keep back from the company something which was material for it to know, so that he could obtain this policy, which otherwise would not have been issued to him. That clearly constitutes fraud, and any act done for any such reason is fraudulent; and therefore, when the court said that it was for the jury to say whether he answered in the way he did with the fraudulent purpose of concealing the fact from the company in order that the might obtain the policy, the charge was correct, and no exception could properly be taken to it.

In the case of Penn Mut. Life Ins. Co. v. Mechanics' Sav. Bank & Trust Co., 37 U. S. App. 692, 19 C. C. A. 286, 72 Fed. 413, it was said by the court that, where the applicant has fully and truthfully answered all the questions asking for facts, he may rightly assume that the range of the examination has covered all matters within ordinary human experience deemed material by the insurer, and that he is not required to rack his memory for circumstances of possible materiality, not inquired about, and to volunteer them. He can only be said to fail in his duty to the insurer when he withholds from him some fact which, though not made the subject of inquiry, he never-

theless believes to be material to the risk, and actually is so, for fear it would induce a rejection of the risk, or, what is the same thing, with fraudulent intent. In that case the question was whether the insured had withheld any circumstance or information touching his past or present state of health and habits of life with which the company ought to be made acquainted. He answered "No," and, the question being presented whether that was a misrepresentation, the court held that the only duty imposed upon the insurer was that he should not suppress the truth in bad faith with the intent to deceive. Other cases are cited, and the conclusion reached is so manifestly in accordance with good sense that it needs no citation of authorities to support it.

Upon the question of the materiality of the attempt to commit suicide, the defendant offered the testimony of its vice president, who was shown to be acquainted with the customs and usages of insurance companies. He was asked whether there was any custom, practice, or usage among life insurance companies with regard to accepting applications for life insurance by parties who had attempted suicide, or whether, if that fact was made to appear, the risk would be refused; and what was the custom of life insurance companies in 1895, and before that time, with respect to issuing policies on the lives of persons who were known to have attempted suicide; and whether the defendant would have issued this policy had that fact been made known to it; and whether that fact would have been deemed material in passing upon the application. All these questions were objected to, and all were excluded. As to the last two, the courts seem to be unanimous that such evidence is incompetent, and no discussion with respect to them is required. But in respect of the questions as to what was the usage and custom among insurance companies there is more doubt. In the case of Penn Mut. Life Ins. Co. v. Mechanics' Sav. Bank & Trust Co., supra, it was held, after a full consideration, that testimony of that kind was competent and material. It was conceded, however, by the learned judge who gave the opinion in that case, that in many of the states that testimony would not be received. Without discussing the question, which was thoroughly considered by Judge Taft, it is sufficient for us to say that the rule in this state seems to have been settled that testimony of that kind is not competent in the case of Rawls v. Insurance Co., 27 N. Y. 282. In that case the defense was that the plaintiff had concealed the fact that the insured was a man of licentious, intemperate, and disorderly passions. It was sought to be proved by experts in the business of life insurance that a person who habitually indulged in intoxicating drink would not be regarded by insurers as an insurable subject. That evidence was excluded. We see no difference in principle between the question decided in that case and those asked here, and upon that authority it must be held that the ruling of the court in excluding this testimony was correct.

The learned justice submitted to the jury the question whether Louis, on the 4th of December, 1893, made an attempt to commit suicide, which was answered in the affirmative, as it must have been in view of the evidence. That answer having been received, a mo-

tion was made by the defendant's counsel that the court direct a verdict for the defendant upon the ground that, that being a material fact, and it not having been stated in the application, the policy was void.  It must be remembered, in discussing this point, that no question was raised as to the voidability of the policy because of the answers to the series of questions marked "9."  No issue was raised as to those questions, and this point can only be presented as bearing upon the invalidity urged in the answer, which is that arising from the false answer to question 11.  As we have already seen, the fact that Louis attempted to commit suicide, although it may have been material, would not avoid this policy, and for that reason the court was correct in denying the motion to direct a judgment in favor of the defendant because of the existence of that fact.

The only other question presented is as to the order denying the motion of the defendant to amend its answer.  It is quite evident that that motion was made to enable the defendant to have the affirmative of the issue, which it had lost by denying certain facts set up in the complaint.  Whether the court should grant the motion for that purpose was a matter which was purely within its discretion, and while, undoubtedly, the question of the exercise of its discretion by the trial court is always reviewable in this court, yet we see no reason to reverse the order which the learned justice made in his discretion with respect to this matter.  The same thing may be said with respect to the application of the defendant to amend the answer by setting up the fact that the policy was invalid because of the false answers to the series of questions marked "9."  That amendment was one of very considerable importance.  The evidence which had been admitted bearing upon that matter was complete upon the issue raised by the allegations with respect to question 11, and whether the circumstances were such that the court should grant the amendment was a matter purely for its own judgment, and we cannot say that the discretion of the court as to that matter either was abused.

For these reasons, the judgment and order must be affirmed, with costs to the respondent.  All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J.  I do not concur in the affirmance of this judgment.  The learned trial judge, in submitting this case to the jury, imposed upon the defendant the burden of establishing a fraudulent intent of the assured in procuring the policy, instead of leaving it for the jury to determine whether the assured had falsely answered a question, which answer he had warranted was in all respects a fair and true answer to the question.  The facts developed upon the trial presented an unusual case, in which there was strong indication that the policy was obtained for the purpose of defrauding the defendant.  But, assuming that the testimony was not of such a character as would justify the judge in directing the jury to find a verdict for the defendant, it seems to me that the jury should have been instructed that, if they should find that the answer to the question, to which attention will be called, was not in all respects a fair and true answer, the plaintiff was not entitled to a verdict.

68 N.Y.S.—44

The application for this policy of insurance was dated June 19, 1895. It was based upon answers to certain questions by the assured, one of which was: "Is there any fact relating to your physical condition, personal or family history, or habits, which has not been stated in the answers to the foregoing questions, and with which the company ought to be made acquainted?" The assured answered, "No," and at the foot of this answer he signed the following:

"It is hereby declared and warranted that the above are in all respects fair and true answers to the foregoing questions; and it is agreed by the undersigned that this application, and the several answers, warranties, and agreements herein, shall be the basis of, a part of the consideration for, and a part of the contract of insurance, * * * and that, if there be in any of the answers herein made any fraud, untruth, evasion, or concealment of facts, then any policy granted upon this application shall be null and void."

On June 20, 1895, this policy was issued by the defendant upon this application, and on April 14, 1896, the assured died in Philadelphia under circumstances which at least suggested a suspicion of suicide. The circumstances by which the defendant sought to prove that this answer was false are as follows: The assured had been in the month of December, 1893, accused by his employers of embezzlement and forgery, and after such accusation he went to a hotel in the city of New York, and attempted to commit suicide by inhaling gas. The attempt, however, was discovered, and he was restored. Immediately after this attempt at suicide the assured was arrested, and in March, 1894, the grand jury of the county of New York indicted him for grand larceny in the second degree, and for forgery in the third degree, and upon these two indictments the assured was admitted to bail. The trial was postponed from time to time until the month of June, 1895, when he procured this policy of insurance. The policy contained a condition that death after conviction of a felony was not assumed by the policy, and that in such a case the policy should become and be null and void. After this policy had been obtained, the assured confessed that he was guilty of forgery in the third degree, for which he had been indicted, and his counsel certified that this confession was freely and voluntarily made. On June 19, 1895, when the assured made the application for this policy of life insurance, the condition was, therefore, as follows: He had been charged by his employers with the crimes of larceny and forgery, and, when thus charged, he had attempted to commit suicide; and he had been subsequently arrested and indicted for those crimes, the trial under the indictment having been postponed. He knew that he was guilty of the charge against him. With these facts, which certainly must have been known to him, he was asked by the insurance company, "Is there any fact relating to your * * * personal or family history * * * which has not been stated in the answers to the foregoing questions, and with which the company ought to be made acquainted?" He answered, "No." Was that a true answer? If there was in this answer any "fraud, untruth, evasion, or concealment of fact," then by the agreement of the assured this policy was void; and it seems to me that the question to be submitted to the jury was whether there was in the an-

swer to this question by the assured any "fraud, untruth, evasion, or concealment of fact." In his charge the learned judge, referring to this answer, thus stated to the jury the question that they were to determine:

"Now, if the question was of such a character that he [the assured] must have known that it related to such an event in his history as an attempt to commit suicide, and if he did not convey such information to the company, or qualify his answer in some way tending to show the company that there was some fact or circumstance that was connected with his personal history of which they ought to be made acquainted, then there was a suppression on his part; there was not a fair, full, and honest answer given to the question; and, if that was done by him with fraudulent intent, in order that he might be able to secure the issuing of this policy to him, why, then a case of fraudulent concealment or fraudulent misrepresentation would be made, and under such circumstances the plaintiff in this case would not be entitled to recover."

After the charge had been given in this form, counsel for the plaintiff asked the court to charge:

"If from the testimony it is as reasonable to infer that Louis did not intend to defraud the company in answering the eleventh question as it is to infer that he did intend to defraud, then the jury is not justified in finding in favor of the defendant on this defense."

To that counsel for the defendant excepted. At the request of the plaintiff, the court also charged:

"I will charge the jury that, if Louis did not fraudulently conceal the fact, if it be a fact, that he had made an attempt to commit suicide, then the policy was not avoided; but that they must find that Louis actually did conceal, or suppress, or fail properly to answer the question with respect to the fact, if found to be a fact, that he made an attempt to commit suicide."

To that counsel for the defendant excepted. I think that this was error. As before stated, under the agreement upon which this policy was based, if there was in any of the answers any "fraud, untruth, evasion, or concealment of fact," the policy was void. The court, by its charge, to which attention has been called, required the jury, before they could find for the defendant, to find a fraudulent intent, while under the agreement it was to be "fraud, untruth, evasion, or concealment of fact" in answering this question.

Counsel for the defendant requested the court to charge the jury, "as matter of law, that the concealment of such an attempt at suicide was a material matter, which the defendant was entitled to know, and, not being informed thereof, the defendant is entitled to a verdict." That was declined by the court, and the defendant excepted; and in the charge the court left it to the jury to say whether or not this was a material fact. I am inclined to think that the court should have found that this was a material fact. But certainly, if it was a question for the jury, then the exclusion of the evidence offered by the defendant that there was a usage and practice among life insurance companies doing business in the United States bearing upon the question of the application for a risk by a party who had attempted suicide, was error. Other questions were asked upon the same subject as to the custom among all insurance companies in the United States and doing business in the state of

New York, and also as to whether or not there was a rule of this defendant corporation refusing to issue any policy to a person who had attempted suicide, and that such a fact would have been deemed by the company a material fact in passing upon his application, which were excluded by the court, and to which the defendant excepted. Certainly, if the question of the materiality of the fact was a question for the jury, evidence of such a usage generally among insurance companies, particularly in conducting the business of the defendant, was competent upon the question of materiality.

No case in this state called to our attention presents the exact question here to be determined. The cases of Mallery v. Insurance Co., 47 N. Y. 52, and Rawls v. Insurance Co., 27 N. Y. 282, relied upon by the plaintiff, were cases in which the policy was sought to be avoided because of the concealment of a fact by the assured which was not called out by any question asked him by the company. In both of those cases the defense was not that the assured had falsely answered a question asked him upon which the issuance of the policy was based, but that he had concealed a fact which was material in determining whether or not the policy would have been granted. Thus, in the Rawls Case, in announcing the rule applicable to the decision, the court says: "The mere omission to state matter not called for by any specific or general question would not be a concealment, and would not affect the validity of the policy." The same question was presented in the Mallery Case, where it was expressly said that the "cases cited by counsel were cases where false answers were given to the inquiries made, and have no application to this case." The defense in the case at bar is based, not upon the suppression of a fact about which no special or general question was asked, but upon a false answer to a question by which the assured was required to state any fact in his history that the company should know before determining whether or not to issue this policy. It is true, this was a general, and not a specific, question; but the defendant was as much entitled to have this general question answered truthfully and fairly as it was the specific questions. It seems to me well settled in this state that a false answer to a material question avoids a policy, whether such answer was fraudulent or not. In Smith v. Insurance Co., 49 N. Y. 211, the question that was asked of the applicant was whether the assured had any of several diseases, to which the answer was, "See surgeon's report." The court held that these questions asked were material, and that the concealment as to the answer was fatal to the contract; that an answer to the question was evaded by a reference to the surgeon's report, and that such evasion was just as fatal to the policy as if the answer had been directly false. In Foot v. Insurance Co., 61 N. Y. 571, it was held that, if the statements in the application which were made warranties were untrue, this avoided the policy, although they were made in good faith, and with a belief of their truth; that the word "false" in the policy was used in the sense of "untrue," and did not limit the effect of the warranty to a statement intentionally untrue. And in Armour v. Insurance Co., 90 N. Y. 450, where the representations were made by

the agent of the plaintiff, and not in answer to any question put by the defendant, it was held that the plaintiff could not recover. In that case the court says:

"The representation in this case was not fraudulent, and arose from a mistake or misapprehension of the plaintiffs' agent; but nevertheless it was a very material representation, and was untrue. * * * It is not necessary in all cases, in order to sustain a defense of misrepresentation in applying for the policy, to show that the misrepresentation was intentionally fraudulent. A misrepresentation is defined by Phillips to be where a party to the contract of insurance either purposely or through neglect, mistake, or inadvertence, or oversight misrepresents a fact which he is bound to represent truly; and he lays down the doctrine that it is an implied condition of the contract of insurance that it is free from misrepresentation or concealment, whether fraudulent or through mistake. If the misrepresentation induces the insurer to enter into a contract which he would otherwise have declined, or to take a less premium than he would have demanded had he known the representation to be untrue, the effect as to him is the same if it was made through mistake or inadvertence as if it had been made with a fraudulent intent, and it avoids the contract. An immaterial misrepresentation, unless in reply to a specific inquiry, or made with a fraudulent intent, and influencing the other party, will not impair the contract. But, if the risk is greater than it would have been if the representation had been true, the preponderance of authority is to the effect that it avoids the policy, even though the misrepresentation was honestly made."

And in Dwight v. Insurance Co., 103 N. Y. 341, 8 N. E. 654, which has become a leading case upon this subject, the question is examined with great care; and, after holding that a false statement in answer to a question which had been by the contract made a warranty avoided the contract, whether material or not, it was held that an answer to a question which was evasive, and suppressed material facts, was also fatal to an action based upon the policy. In summing up this branch of the case the court says:

"It is quite clear that these answers gave no information as to the actual employment and business of Dwight to the defendant, and would have been quite as correct and satisfactory if he had represented himself to be a geologist or professor of elocution. We think it was clearly the duty of the trial court upon this evidence to have directed a verdict for the defendant."

Reference has been made to these cases to show that, where the defense is based upon a false answer to a question, or a misrepresentation of a material fact, it is not necessary for the defendant to prove a fraudulent misrepresentation. The distinction between the cases where there must be proof offered and where it is not essential is as to the materiality of the answer or representation. If the false statement was material, then it is not necessary that fraud should be proved. If it was not material, then proof of fraud is essential. Applying this rule to this case, the jury could certainly have found that the facts suppressed by the assured were material in determining whether or not this insurance should be given; and, if they were material, if the assured intentionally suppressed knowledge of material facts, and thereby falsely answered the question, I think that the defendant was entitled to a verdict, although the jury failed to find that there was any fraudulent intention in suppressing this information. In my opinion, there should be a reversal of the judgment.