FRANKLIN BLDG. CO. v. FINN. (No. 6643.)

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

1. LANDLORD AND TENANT (§ 190*)—POSSESSION OF PREMISES—DISTURBANCE BY CITY.

Where a tenant was entitled to the use of vaults constructed under the street, the taking of such vaults by the city for a subway was not an eviction of the tenant, or breach of the implied covenant for quiet enjoyment, but at most entitled the tenant to a reduction of the rent; and where the tenant relies upon the taking of the vaults as a counterclaim in summary proceedings to recover the premises for nonpayment of rent, he must show that the amount of such reduction exceeds the rent due.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 765–769; Dec. Dig. § 190.*]

2. LANDLORD AND TENANT (§ 190*)—POSSESSION OF PREMISES—DISTURBANCE BY THIRD PERSONS—LIABILITY OF LANDLORD.

Where the landlord himself evicts the tenant from part of the demised premises, the right to rent is suspended until possession is restored; but, if the partial eviction is by a third party, the tenant must pay proportionately the rent for the premises of which he remains in possession.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 765–769; Dec. Dig. § 190.*]

3. LANDLORD AND TENANT (§ 298*)—RECOVERY OF POSSESSION—SUMMARY PROCEEDINGS—COUNTERCLAIM—NEGLIGENCE.

In summary proceedings to recover possession of leased premises for nonpayment of rent, the tenant cannot by way of counterclaim allege damages caused by negligence of the landlord in making alterations and repairs, since such claims arise in tort, and not in contract.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1276–1280; Dec. Dig. § 298.*]

4. LANDLORD AND TENANT (§ 298*)—RECOVERY OF POSSESSION—SUMMARY PROCEEDINGS—STATUTE.

The amendment to Code Civ. Proc. § 2244, made by Laws 1893, c. 705, by adding to the defenses that may be interposed in summary proceedings an answer setting forth new matter constituting a legal or equitable defense or counterclaim, does not allow any matter to be set forth in such counterclaim which could not be pleaded as a counterclaim in an action for rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1276–1280; Dec. Dig. § 298.*]

Appeal from Appellate Term, First Department.

Summary proceeding by the Franklin Building Company against John B. Finn to recover possession of leased premises. A judgment of the Municipal Court for the defendant was reversed, and new trial granted, by the Appellate Term (86 Misc. Rep. 20, 148 N. Y. Supp. 90), and defendant appeals. Determination of Appellate Term affirmed, and final order directed for petitioner.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Ernest Rhea Early, of New York City, for appellant.

John G. Milburn, Jr., of New York City (Thomas S. Doughty, of New York City, on the brief), for respondent.

LAUGHLIN, J. This is a summary proceeding to recover the possession of premises in the borough of Manhattan, New York, consisting of the store, basement, and subbasement of the building extending from Broadway to Franklin and Benson streets, and known as No. 358 Broadway, as Nos. 59 to 65 Franklin street, which, with the exception of the space in the subbasement on the Franklin street end of the building occupied by engines and boilers and the engine room and coal vaults connected therewith, and the right of access to the engines and boilers for the purpose of operating them, and to the elevators operated by them, were leased by the petitioner in this proceeding to Finn by an indenture dated February 19, 1907, for the period ending on the 1st day of March, 1912, and were relet by the same landlord to the same tenant by an indenture bearing date the 27th day of January, 1912, for the period of three years from the 1st day of February, 1912, to be used and occupied as a furniture salesroom, for which the tenant agreed to pay the annual rental of $7,000 in equal monthly installments in advance. The petitioner shows default in the payment of rent for the months of June, July, August, September, and October, 1913, aggregating $2,916.70.

The tenant ultimately interposed an amended answer denying that any rent was due or owing, and alleged as a first defense that in making the lease he was acting for the copartnership of Finn Bros., and that the possession was that of said firm, and that this was understood by the landlord. He then pleaded 13 further separate defenses and counterclaims; the same facts being pleaded in each instance under the heading both as a defense and counterclaim. The first counterclaim is designated the second defense, doubtless owing to the fact that there was a first separate defense not pleaded as a counterclaim, and that form was followed throughout. The trial was before one of the judges of the Municipal Court and a jury. The court dismissed the eighth and twelfth counterclaims, and the defenses claimed by virtue of the facts therein pleaded, but left all of the other defenses, excepting the first, which was without merit and appears to have been abandoned, and all other counterclaims to the jury. A general verdict was rendered in favor of the tenant, and from the final order entered thereon the landlord appealed to the Appellate Term, which, by a majority vote, reversed the order, on the ground that the court erred in submitting the seventh and eighth counterclaims to the jury, and on the further ground that the evidence in support of the other counterclaims was "vague and inconclusive, and not sufficient to support the jury's verdict."

The reason assigned by the majority opinion at the Appellate Term for holding that the seventh and eighth counterclaims should not have been submitted to the jury is that they relate to work ordered by the Public Service Commission in connection with the construction of the subway, and that the work was performed by the Degnon Construction Company, over which the plaintiff had no control. It is conceded that the work performed by the Degnon Construction Company by order of the Public Service Commission was that to which the seventh defense and sixth counterclaim only relates. The tenant by

that defense and counterclaim claims an eviction. The answer is somewhat complicated, and the form of the pleading is liable to confuse one attempting to analyze the evidence in the light of the numerous contentions made in behalf of the tenant, and the learned Appellate Term was doubtless thereby inadvertently led into erroneously stating the particular counterclaim and defense, and the nature thereof, to which the principle of law upon which it in part predicated the reversal applied; but that is of no importance and does not affect the decision.

[1, 2] The tenant pleaded for a sixth counterclaim, and as a defense, that on or about the 15th day of October, 1912, the landlord, in violation of the provisions of the lease, evidently referring to the implied covenant for quiet enjoyment, entered upon the premises and *partially* evicted the tenant therefrom by constructing a brick wall along the Broadway line of the premises, and thereby cut off the tenant's access to the vaults in Broadway, which were appurtenant to the premises demised, and cut off light, air, and access, and has ever since neglected and refused to remove the wall and to permit the tenant to use the vaults. The material facts with respect thereto are that the city reclaimed for subway purposes the space in Broadway occupied by the vaults appurtenant to the premises leased to the tenant, and the contractor, in constructing the subway, according to the plans and specifications duly adopted therefor, constructed the wall along the Broadway line of the premises, and cut off access to and use of the vaults in connection with the demised premises; but otherwise the tenant continued in possession. The learned Appellate Term was right in holding that this afforded no basis for a counterclaim in the summary proceeding.

There was no wrongful eviction or breach of the implied covenant for quiet enjoyment, for while it may have been expected when the lease was made, and even that is doubtful on the facts of this case, that the municipal authorities would continue to permit the use of the vaults, yet when, in the exercise of a paramount title and superior right, that space was recalled for public use, the tenant could not remain in possession of the remaining part of the demised premises and refuse to pay rent, and at most his only right was to claim a reduction or apportionment of the rent, and it would have been incumbent on him to have shown that his claim for such reduction of rent exceeded the amount of rent unpaid as shown by the petition. Duhain v. Mermod, Jaccard & King J. Co., 211 N. Y. 364, 105 N. E. 657; Gallup v. Albany Ry. Co., 65 N. Y. 1. See, also, Hett v. Lange, 139 App. Div. 743, 124 N. Y. Supp. 573. Where the landlord himself evicts the tenant from part of the demised premises, and the tenant remains in possession of that part from which he has not been evicted, the landlord's right to rent is suspended until he restores possession to the tenant; but if the partial eviction be by a third party, the tenant must pay proportionately the rent for the premises of which he remains in possession. Dyett v. Pendleton, 8 Cow. 727; Liedtke v. Meyer, 137 App. Div. 74, 122 N. Y. Supp. 95; Duhain v. Mermod, Jaccard & King J. Co., supra.

[3] The first counterclaim is for damages alleged to have been caused by the removal by the landlord of the front windows on the Broadway side and its failure to replace them for a period of two months, whereby the goods, wares, and merchandise of the tenant are alleged to have been damaged by grit, dust, and dirt which were thereby permitted to enter the premises; and the second counterclaim is for damages alleged to have been caused by negligence of the landlord in removing iron roll curtains on the Broadway side of the building, whereby grit, dust, and dirt were permitted to fall upon the tenant's furniture. The removal of the windows and the removal of the iron curtains are alleged to have been at the same time, and it appears that this work was done in compliance with a resolution of the board of estimate and apportionment, providing, among other things, for the removal of encroachments on Broadway from the Battery to Columbus Circle, owing to the fact that parts of the building encroached upon the street, and by order of the borough president. The notice of the borough president was directed to the owner or tenant of the premises; and the landlord contracted to have the work performed under the direction of its architect, and it was performed by the contractor. In these counterclaims there is no claim that the space rented to the tenant was lessened by the acts of which complaint is made, and the only apparent basis for the counterclaims, as alleged or as shown by the evidence, is with respect to negligence in the performance of the work, consisting in acts of omission in failing to guard the openings, and in acts of commission in directly precipitating grit, dust, and dirt upon the tenant's furniture.

[4] It is claimed that these counterclaims were authorized by the amendment of section 2244 of the Code of Civil Procedure made by chapter 705 of the Laws of 1893, relating to the answer that may be interposed in a summary proceeding, which added thereto the following:

"Or setting forth a statement of any new matter constituting a legal or equitable defense or counterclaim. Such defense or counterclaim may be set up and established in like manner as though the claim for rent in such proceeding was the subject of an action."

It is manifest, from the phraseology of this amendment, that the Legislature did not intend to authorize in a summary proceeding any defense or counterclaim which, under the practice as regulated by other provisions of law, could not be pleaded as a defense or counterclaim in an action for rent. The rule of law on this point is not in harmony in all jurisdictions; but in this jurisdiction it was well settled before the enactment of that amendment that a counterclaim for damages caused either by negligence or by trespass was not proper in an action for rent, for the reason that such an action is on contract, and the counterclaim would be for tort, not arising out of the same transaction, but a transaction connected with the same subject. Edgerton v. Page, 20 N. Y. 281; Gallup v. Albany Ry. Co., supra; Boreel v. Lawton, 90 N. Y. 293, 43 Am. Rep. 170; Walker v. Shoemaker, 4 Hun, 579; Drake v. Cockroft, 4 E. D. Smith, 34; Cram v. Dresser, 4 N. Y. Super. Ct. 120; Levy v. Bend, 1 E. D. Smith, 169; Reiner

v. Jones, 38 App. Div. 441, 56 N. Y. Supp. 423. But if the counterclaim arose from a breach of contract by the landlord it would be authorized (Cook v. Soule et al., 56 N. Y. 420; Walker v. Shoemaker, supra; Whitbeck v. Skinner, 7 Hill, 53), and it might be interposed in a summary proceeding, not to recover thereon, but to defeat the proceeding (Hett v. Lange, supra). See, also, Woods v. Gracewich, 67 App. Div. 53, 73 N. Y. Supp. 472; Meyerhoffer v. Baker, 121 App. Div. 797, 106 N. Y. Supp. 718; Houston Mercantile Co. v. Powell & King, 72 Misc. Rep. 358, 130 N. Y. Supp. 274; Simon v. Schmitt, 137 App. Div. 625, 122 N. Y. Supp. 421.

In the seventh counterclaim it is alleged that the landlord entered the premises to repair a large glass in the ceiling of the store, and while doing so negligently caused glass to fall on the defendant's furniture. This is clearly a counterclaim for negligence, and is not authorized, although, if it were alleged that the landlord contracted with the tenant to make the repairs in a particular manner, and failed so to do, the counterclaim would be good. Walker v. Shoemaker, supra.

The ninth, tenth, and eleventh counterclaims are for damages caused to defendant's furniture by the falling of plaster from the ceiling, alleged to have been due to the fact that the plaster was in a rotten, defective, and unsafe condition when the premises were leased, and that this condition was not known to the tenant, but was known to the landlord, who failed and neglected to perform the duty devolving upon it of putting the ceiling in a proper state of repair, either before or after the execution of the lease. The tenant was permitted to amend these three counterclaims to conform to the evidence, by alleging in substance that the damages were caused by the negligence of the landlord, or of a contractor employed by it to repair the ceiling. The tenant, therefore, has predicated those damages on negligence, and the counterclaims were improper.

The third counterclaim is for damages alleged to have been caused by the negligence of the landlord in replacing, with rough boards, vault lights—evidently meaning the glass covering over the vaults—which it is alleged it removed on the 1st of August, 1912, whereby the goods, wares, and merchandise of the tenant were damaged by exposure to wind, rain, and dust until the 1st of October, 1912, when the vault lights were properly replaced, and whereby the entrance to the premises from the Broadway side was obstructed, so as to hinder and prevent the ingress and egress of customers. That counterclaim is expressly pleaded as for negligence; and, manifestly, it is of negligence in connection with the removal and replacing of the vault lights that complaint is made.

The fourth counterclaim is also pleaded as for damages for negligence; and the facts constituting the negligence were shown to be that on or about the 1st day of November, 1911, the landlord entered the premises and erected a brick wall in "the rear part thereof," and removed a large part of the wall on the Franklin street side, and "negligently placed" upon the basement and store floors large quantities of brick, mortar, lime, and water, "and wrongfully damaged and changed the entrance to the Franklin street side" of the premises, and

"negligently performed the said work, so that large quantities of lime, water, mortar, dust, and dirt fell upon the goods, wares, and merchandise of tenant during the period of construction," and that the landlord neglected and refused to replace the wall on the Franklin street side until on or about the 1st day of May, 1912. This counterclaim must also be deemed one for negligence; and we might add that it also appears that the landlord was but carrying out a lawful binding order of the superintendent of buildings with respect to the erection of fire escapes and providing proper means of access thereto, and inclosing of the elevator shaft in fireproof material.

The fifth counterclaim is for loss and damage alleged to have been sustained by a partial eviction by the landlord on the 1st of November, 1911, by depriving the tenant of the use of approximately 300 square feet of space "in the rear part thereof," and it is alleged that the landlord has ever since continued in possession of that part of the floor space. The facts pleaded would, doubtless, have authorized a counterclaim, and evidence upon which the tenant would have been entitled to an apportionment of the rent, owing to his being deprived of a substantial part of the entire space for which the rental was agreed upon. An apportionment of rent, of course, would leave some rent due, and would not be a defense to the proceeding, unless it was for a sufficiently long period to equal the rent for the failure to pay which the proceeding was instituted. It is unnecessary to decide whether the evidence was sufficient to warrant an apportionment of the rent, for the reason that there is a stipulation for judgment absolute in favor of the landlord in the event that this court decides to affirm the determination of the Appellate Term.

The thirteenth counterclaim is for loss of business and profits owing to the acts of negligence of the landlord of which complaint is made in the other counterclaims. It is quite clear, for the reasons already assigned, that the trial court erred in denying the motions of counsel for the landlord to dismiss the various counterclaims which did not involve any question of apportionment of rent, and therefore it became necessary for us to affirm the determination of the Appellate Term, and, in view of the stipulation, we affirm the order of the Appellate Term in so far as it reverses the final order, and we modify it by eliminating the provision awarding a new trial, and we direct a final order in favor of the petitioner, with costs. All concur.