Broadway & Ninety-Fourth Street, Inc., Landlord, v.
C. & L. Lunch Co., Tenant.

(Municipal Court of the City of New York, Borough of Manhattan,
Fifth District, August, 1921.)

Summary proceedings — Municipal Court of the city of New York
— when counterclaim not limited in amount — consequential
damages — when leave to discontinue denied — reduction of
verdict — pleading — Municipal Court Code, §§ 6 (2), 86 —
Code Civ. Pro., § 2244.

There is no statutory provision prohibiting the Municipal
Court of the city of New York from entertaining counterclaims
in summary proceedings, irrespective of the limit in amount,
and entering judgment thereon.

The Municipal Court Code deals only with actions as distinguished from special proceedings except when specifically referred to, and section 86 of said Code, which limits the amount
recoverable on a counterclaim to the sum of $1,000, is not applicable to a summary proceeding instituted in the Municipal
Court.

There being neither constitutional nor statutory objections
against the maintenance of a counterclaim in a summary proceeding, in excess of $1,000, full force and effect must, by virtue
of section 6 (2) of the Municipal Court Code, be given to section
2244 of the Code of Civil Procedure, as amended in 1920.

The right of a plaintiff in the Municipal Court to discontinue
is governed by the rules in force in the Supreme Court, and
where after a lengthy trial of a summary proceeding in the
Municipal Court of the city of New York the sole issue was
that raised by the tenant's counterclaim, a motion by the landlord for leave to discontinue will be denied in the exercise of
judicial discretion.

The jury found that all the conditions of the assignment
clause of the lease were lived up to, and also that through the
acts of the landlord, the tenant, the assignee of the unexpired
term of the lease and of the restaurant business conducted upon
the premises, together with its equipment and furniture, had
suffered damages to the extent of $16,000. *Held*, that in the

circumstances consequential damages were recoverable, not including, however, a brokerage commission paid by the tenant.

The sum of $8,954.81 being concededly due to the landlord, a motion to set aside a verdict of $7,045.19 and for a new trial will be granted unless the tenant stipulates to reduce the verdict in the amount of the brokerage commission.

The fact that the counterclaim in its prayer did not demand an affirmative judgment not having been raised at the trial, the objection that there was a variance between the pleadings and the proof came too late on motion to set aside the verdict.

Summary proceedings.

Joseph A. Seidman, for landlord.

Abraham P. Wilkes (Joseph I. Green, of counsel), for tenant.

Spiegelberg, J.   This is a summary proceeding to recover possession of premises situated at the northeast corner of Broadway and Ninety-fourth street, borough of Manhattan, on account of non-payment of rent.   The tenant admitted upon the trial that the rent remained unpaid and set up a counterclaim for damages sustained through the landlord's breach of one or more covenants of the lease.   The jury rendered a verdict in favor of the tenant in the sum of $7,045.19.   On the coming in of the verdict the landlord moved for a new trial and to set aside the verdict. Decision having been reserved, this motion is now before the court.

Upon the trial the rent due to the landlord was conceded to be the sum of $7,583.31, together with accrued interest of $113.33.   The lease also provided that the water rates and the plate glass insurance premium should be borne by the tenant and added to the rent. These two items, which by agreement of the parties were adjusted at $1,200 and $58.70, respectively, added

to the rent, made a total of $8,954.81 concededly due to the landlord. The jury assessed the tenant's damages at $16,000 and, deducting the amount due to the landlord, arrived at the verdict which they rendered.

Before passing upon the objections raised by the landlord, two preliminary questions, although not particularly referred to upon the briefs of counsel, should be disposed of. The one deals with the jurisdiction of this court to receive a verdict for the tenant in excess of $1,000 and to enter judgment thereon. Section 2244 of the Code of Civil Procedure permits a defense or a counterclaim in a summary proceeding to " be set up and established in like manner as though the claim for rent in such proceeding was the subject of an action." Chapter 132 of the Laws of 1920 amends the section by adding:

" If the court finds that a defense or counterclaim has been established in whole or in part, it shall, upon rendering a final order, determine the amount of rent due to the petitioner or make such other proper disposition as shall determine the rights of the parties and may give affirmative judgment for the amount found to be due on the counterclaim."

The statute does not limit the amount of the counterclaim to be rendered. There is no constitutional prohibition to prevent the legislature from conferring upon a court of inferior jurisdiction power to render judgment upon a counterclaim in excess of $2,000. Section 18 of article 6 of the Constitution prohibits the legislature from conferring any greater jurisdiction upon inferior local courts than is conferred upon County Courts, and section 14 of article 6 provides that the jurisdiction of County Courts shall not be so extended as to authorize an action for the recovery of money in which the sum demanded exceeds $2,000.

It has been held that under this provision counter-claims in the County Courts are not limited in amount, and that the restriction as to the amount of the claim is based wholly on the demand of the complaint. *Howard Iron Works* v. *Buffalo Elevating Co.,* 176 N. Y. 1. Nor is there any legislative provision pro-hibiting the Municipal Court from entertaining coun-terclaims in summary proceedings, irrespective of the limit in amount, and entering judgment thereon. Sec-tion 86 of the Municipal Court Code, which limits the amount recoverable on a counterclaim to the sum of $1,000, is not applicable. The Municipal Court Code deals only with actions as distinguished from special proceedings except where the latter are specifically referred to. The power to entertain summary pro-ceedings is conferred by subdivision 2 of section 6 of the Municipal Court Code, which provides that the court shall have jurisdiction of " a summary pro-ceeding authorized by the Code of Civil Procedure to recover possession of real property." The practice and procedure regulating summary proceedings are contained in the Code of Civil Procedure. The Munic-ipal Court has a code of its own governing actions, but it does not affect summary proceedings. As to those by virtue of subdivision 2 of section 6 of the Municipal Court Code, the Code of Civil Procedure governs, not the Municipal Court Code. Section 2244, like any other section dealing with summary proceed-ings, must be read into the Municipal Court Code. The purpose of the 1920 amendment is plain. The legislature sought to have all controversies adjusted in one proceeding and do away with multiplicity of actions. As there is neither constitutional nor legis-lative objection against the maintenance of a counter-claim in a summary proceeding in excess of $1,000,

force and effect must be given in the Municipal Court to section 2244 as amended in 1920.

The other preliminary point to be disposed of deals with the motion made by the landlord for leave to discontinue the proceeding. Upon the conclusion of the testimony, after a three days' trial, the landlord moved for a final order in its favor. Argument was had and the motion was denied. Thereupon the landlord moved to discontinue the proceeding. The court, in the exercise of its discretion, denied the motion on the ground that the discontinuance would injuriously affect the rights of the tenant. The claim of the landlord had been eliminated as an issue. The entire controversy turned upon the tenant's counterclaim. In *Palmedo* v. *Walton Reporter Co.*, 112 Misc. Rep. 729, affirmed by the Appellate Division on the opinion below, the rule was reiterated that " The court, in its discretion, should deny a motion to discontinue an action when the rights of the defendant will be materially affected and injured." As stated in *Winans* v. *Winans,* 124 N. Y. 140, 145, the authorities " *   *   * support the right to refuse. leave whenever circumstances exist which afford a basis for the exercise of legal discretion, *  *  *." Where a counterclaim has been interposed a discontinuance should ordinarily not be granted (*Jermyn* v. *Searing,* 139 App. Div. 116), especially not where, after a lengthy trial, the sole issue left in the case was that raised by the counterclaim. Cases such as *Nichols* v. *Williams,* 42 Misc. Rep. 527, and *Engel & Co.* v. *Davis,* 81 id. 202, which hold that the plaintiff in the Municipal Court has the right to discontinue before final submission, even though a counterclaim has been interposed, have no application. They were decided under subdivision 1 of section 248 of the former Municipal Court Act, which made it mandatory upon the court to permit a discontinuance by the plain-

tiff at any stage prior to final submission. It is pointed
out in the *Nichols Case, supra,* that, in view of the
conflict between the provisions of section 248 of the
Municipal Court Act and the rules and regulations of
the Supreme Court, the former must control. It is,
however, significant that the court said that if it could
agree with the view that the application to discontinue
was addressed to the discretion of the court "we
should not interfere with the discretion as exercised."
Under the Municipal Court Code the rules govern-
ing the right of the plaintiff to discontinue are those
in force in the Supreme Court. *Droege* v. *Bittner,* 93
Misc. Rep. 506. In *Rosen* v. *981 Union Avenue Cor-
poration,* 112 Misc. Rep. 492, the court emphasized the
point that the defendants did not interpose a counter-
claim and that the record discloses nothing which
would indicate that any rights of the defendants or
any one else had intervened or would have been prej-
udiced so as to demand a continuance of the actions
to their termination. The situation in this case is
entirely different. From what has been said it is
apparent that the rights of the tenant would have been
injuriously affected by a discontinuance of the pro-
ceeding after the trial had been to all intents and pur-
poses completed. If the discretion of the court can be
invoked at any time, I am of the opinion that in this
instance it was properly exercised in the denial of the
landlord's motion.

The premises in question were leased by the landlord
to the tenant by two instruments, one dated October 1,
1917, which was the principal lease, and the other June
1, 1918. Both leases were to expire October 1, 1927.
The total rental was $13,000 a year. Under the prin-
cipal lease the tenant agreed to fit up the premises
and conduct the same as a high grade and first class
restaurant in a reasonably satisfactory manner. This

was done.   The tenant bases its claim for damages upon a breach by the landlord of the so-called " assignment clause " of the lease.   The tenant agreed not to assign the lease or sublet the premises without the landlord's consent in writing.   The lease deals with this matter in some detail and then continues:

" * * * except that the tenant is hereby permitted, after having fully and completely fitted up, decorated and completed the furnishings of a first class restaurant as herein provided, to assign this lease to reputable white persons financially responsible and of good repute for the express purposes herein limited, provided such proposed assignees first assume and undertake to carry out and perform well and faithfully all of the terms and covenants of this agreement on the part of the tenant to be performed, and also, at the same time and as a condition precedent to taking such assignment, pay unto the landlord the equivalent of two months' rent in cash as security for the full and faithful performance by the tenant of the terms of this agreement."

During the year 1920 the tenant entered into negotiations with a number of prospective assignees of the lease and purchasers of the restaurant, but the landlord persistently refused to consent to the assignment of the lease or to consider any of the names submitted.   Finally, in October, 1920, the tenant assigned the leases and sold its restaurant to Wilder Brothers. In view of the prior refusals of the landlord to recognize any prospective assignees, the arrangement between the tenant and Wilder Brothers was made dependent upon the undisputed and undisturbed possession of Wilder Brothers for the period of three months, and the agreement was to terminate in case the landlord at any time refused to consent to the assignment of the lease.   Wilder Brothers went into

possession.  The jury found that all the conditions of the assignment clause of the lease were lived up to. The landlord, however, rejected them as tenants, declined to accept the proffered security, threatened legal proceedings to compel them to vacate, and in January, 1921, gave notice of termination of the lease and stated that the supply of steam and hot water would be discontinued.  Subsequent negotiations between the landlord and tenant had no result, and thereupon, in the beginning of the month of April, Wilder Brothers vacated the premises and the consideration paid by them was returned and the tenant resumed possession.  The profit thereby lost is sought to be recovered by the tenant.  The landlord takes the position that it did not breach any covenant of the lease.  Its claim is that the assignment clause merely *permits* the tenant to assign the lease upon compliance with certain conditions, and that neither consent nor any further act on the part of the landlord was required.  It seems clear that the contract between the parties goes further.  The permission to assign was made dependent upon the fitting up of the place as a first-class restaurant; that the assignee be a reputable white person, financially responsible, of good repute; that he assume all the terms of the agreement and pay the landlord the equivalent of two months' rent as security for the faithful performance of the terms of the agreement.  The landlord accordingly was called upon to pass upon the qualifications of the proposed assignee.  The tenant had certain duties to perform, and there was a reciprocal obligation resting upon the landlord.  Permission to assign required affirmative acts by the landlord.  It implied a consent to the assignment upon compliance with the conditions stated in the agreement.  The consent, though not specifically referred to in the agreement,

will be read into it as a necessary implication from the agreement between the parties. *Grossman* **v.** *Schenker,* 206 N. Y. 466–469. Contracts are not to be interpreted by a slavish adherence to the letter. The intention as gathered from the instrument is controlling. As stated by Cardozo, J., in *Wood* v. *Duff-Gordon,* 222 N. Y. 88, 91:

" The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view to-day. A promise may be lacking, and yet the whole writing may be ' instinct with an obligation ' imperfectly expressed."

If the wording clearly indicates the intention of the parties their agreement is spelled out of the phrasing adopted by them. *Edison Elec. Illum. Co.* **v.** *Thacher,* 229 N. Y. 172–176. And in *Ehrenworth* v. *Stuhmer & Co.,* 229 N. Y. 210, the court says at page 219: " Every detail of a contract need not be specifically expressed. The law takes a broader view of what must be contained in a contract."

Assuming, however, that the landlord in this proceeding was justified in remaining passive, it did not content itself with that. It not only rejected Wilder Brothers, but actively threatened interference with their quiet possession of the premises. Good faith, which must be read into every contract, required the landlord to recognize the assignee offered by the tenant in accordance with the lease.

The landlord makes its principal objection to the verdict upon the assessment of damages. All the disputed facts having been decided in favor of the tenant, it must be accepted that Wilder Brothers repudiated the agreement with the tenant through a reasonable apprehension that the landlord would interfere with their peaceable possession and render the con-

tinuation of the restaurant business impossible. The consideration paid by Wilder Brothers to the tenant was the sum of $19,500. They purchased the unexpired term of the lease and the restaurant business, together with its equipment and furniture. The testimony was to the effect that the market value of the furniture was $4,500; that the restaurant was not doing well, wherefore its good will could not be considered as having any value; that the unexpired term of the lease had no rental value on account of the restrictions contained in the lease. The tenant recovered the loss which it suffered, namely, $19,500, less the value of the furniture. I am of the opinion that under the circumstances a deviation from the ordinary measure of damages was permissible and that consequential damages are recoverable. The fundamental principle underlying the award of damages is to give compensation to the injured party; in other words, to put him in as good a position as he would have been in had the other party kept his contract. 3 Williston Cont. § 1338. In this case the jury found that through the act of the landlord the tenant suffered damages to the extent of $16,000. Why should it be deprived of this amount? It is apparent from the lease that the tenant intended to make an assignment thereof and sell its business when a favorable opportunity offered itself. Such a contingency is strongly indicated, and the consequences thereof must have been present in the minds of the parties when they executed the lease. The law will not withhold aid from the tenant because it was successful in disposing of the lease though it had no rental value and of its business though it was a losing concern. It is entitled to the value of the bargain. The rule governing consequential damages, as stated in *Hadley* v. *Baxendale,* 9 Exch. 341, has been generally adopted. The court

says, at page 354: " Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

In *Delafield* v. *Armsby Co.,* 131 App. Div. 572; affd., 199 N. Y. 518, on the opinion of Ingraham, J., writing for the Appellate Division, is found an elaborate discussion of the rule that indemnity to the injured party is the basis of the measure of damages in actions for breach of contract. It was there held that, although usually the measure of damages for the breach of a contract to sell merchandise is the difference between the contract price and the market value, where there is no market and the purchaser cannot obtain the property he may recover the loss of profits from a resale which was within the contemplation of the parties at the time of making the contract. Although the case before the court was one of the sale of merchandise, there is no distinction in principle between such a case and this. The tenant was able to dispose of the lease, but through the fault of the landlord lost its profits. These profits are the direct fruits of the contract made between the parties; they are capable of exact ascertainment, and I see no valid reason why they should be withheld from the tenant. But it is asserted that the rule of consequential damages applies only where the facts of the subsidiary contract made by the injured party were known to the party committing the breach. It is not necessary that the contract with Wilder Brothers should have been in existence, or even

that the landlord should have notice of the contemplated contract at the time of making the lease. The determining question is whether the collateral contract was within the contemplation of the parties when the original contract was made. 17 C. J. 749. In *Delafield* v. *Armsby Co., supra,* the court says at page 585: "It certainly could make no possible difference to the defendant or to what was contemplated by the parties when the sale was made whether a subcontract had been actually made or whether one would be made immediately upon the execution of the contract with the defendant."

In 3 Sutherland on Damages (4th ed., p. 3203) the author says that the profits a tenant might have made by assigning his lease are recoverable from a landlord who unreasonably refused to consent to the assignment in accordance with his obligation. The case cited in support of the text (*Underwood Typewriter Co.* v. *Century Realty Co.,* 165 Mo. App. 131) has many features in common with the case under consideration. In that case the lease prohibited the assignment thereof without the written consent of the landlord. Upon application of the tenant the landlord promised to give his written consent provided the new tenant proved satisfactory and acceptable. The plaintiff-tenant, relying upon his promise, finally procured an undertenant at an increased rent over that fixed in the lease and in addition the plaintiff was to receive a bonus of $500. The name of the undertenant was submitted to the landlord, who was about to give his consent when he learned of the $500 bonus, whereupon he declined to indorse his consent to the subletting unless he received that bonus. The plaintiff refused to accede to this demand. Through the landlord's refusal to give the consent the plaintiff failed to sublet the premises. The court held that the damages were properly assessed

in such sum as the plaintiff had lost through the defendant's refusal to give his consent. The court says at page 140: " Where it appears, as here, that the contract was breached by defendant for no other reason than because it was unwilling to comply with the agreement, the measure of the damages is the value of the bargain to the injured party."

The same situation obtains here.

The landlord also calls attention to variances between the pleadings and the proof, and especially to the fact that the counterclaim in the prayer for relief does not demand affirmative judgment. No objections were raised to these defects during the trial, when they could have been cured. Nor was the attention of the court called to the failure of the tenant to demand affirmative relief, although the case was submitted to the jury with directions to render a verdict in such sum for the tenant as they believed it to have been damaged, provided they found for the tenant in excess of the conceded claim of the landlord. The silence of the landlord during the trial must be taken as a consent that the issues should be tried as submitted upon the trial. The objection that there was a deviation from the pleadings comes too late. *Frear* v. *Sweet,* 118 N. Y. 454. Where counsel fails to present to the court all the points, he cannot be heard after the trial to establish a proposition which was not before the court. *Boehm* v. *Commercial Alliance Life Ins. Co.,* 9 Misc. Rep. 529; affd., 86 Hun, 617; *Smith* v. *Rentz,* 73 id. 195.

However, the jury were permitted to and did include in their verdict the sum of $1,000 paid by the tenant as brokerage commission. This was error. In no aspect of the case was the tenant entitled to recover that amount from the landlord.

The motion to set aside the verdict and for a new

trial is granted unless within five days the tenant file a stipulation consenting to reduce the verdict to the sum of $6,045.19, and upon filing such stipulation the motion is denied and the clerk .is directed to enter judgment in favor of the tenant in accordance with the verdict as reduced.

Decreed accordingly.