HARFRIED REALTY Co., INC., Landlord, Plaintiff, *v.* SPUYTEN AMUSEMENT CORPORATION, Tenant, Defendant.

Municipal Court of New York, Borough of Manhattan, Seventh District, May 12, 1933.

*Gustavus Leight,* for the plaintiff.

*Benjamin Rich,* for the defendant.

Lewis, David C., J. The landlord institutes this summary proceeding for the non-payment of rent under a written lease. In its answer the tenant sets up a counterclaim, consisting of the allegations that the landlord carelessly and negligently allowed and permitted the water draining from the roof of the adjoining building (owned and controlled by this landlord) to run down and into the premises demised to the tenant herein, so as to cause said waters to be collected in the basements, toilets and other parts of the demised premises, resulting in damage to the tenant herein in the claimed sum of $10,000.

It appears that prior summary proceedings had been instituted by this landlord against this tenant for previous non-payments of earlier installments. In one instance no counterclaim was pleaded, but, to the contrary, an agreement as to the amount of rent due was reached and the sum was paid and the proceedings settled; and that in the other instance the tenant did not join issue but paid the rent voluntarily.

The landlord moves to dismiss the counterclaim on the grounds:

(1) That the default in the payment of the present rent and the payment of previous rents preclude the defendant from interposing this counterclaim.

(2) That the termination of the prior proceedings constitutes *res adjudicata* and bars the defendant from enforcing this counterclaim.

(3) That the alleged cause of action cannot be interposed as a counterclaim in these proceedings.

Since the inception of these proceedings, the parties have arranged

for the payment of the accrued and accruing installments of rent, agreeing that such payments shall be without prejudice to the rights of the tenant to interpose or prosecute the counterclaim now pleaded, and in substance further stipulating that these proceedings shall remain alive and unabated for the determination of the questions here presented.

The first ground urged for dismissal is overruled.

The fact that the tenant paid the rent in the past, while the acts constituting the cause of action were being committed, will not stand in the way of the enforcement of his counterclaim. (*Times Sq. I. Co.* v. *Fleischmann V. M. B., Inc.*, 173 App. Div. 633.)

Nor can the default in the payment of the present rent be urged as a bar to the defendant's counterclaim. (*Drago* v. *Meade*, 30 App. Div. 258; *Goelet* v. *Goldstein*, 229 id. 456, 457; *Parker* v. *Jenkins*, 135 Misc. 666; *Jefferson R. E. Co.* v. *Hiller*, 39 id. 784; *Security Mtge. Co.* v. *Kallis*, 102 id. 693.) And logic as well as law seconds this holding.

If the tenant instituted an independent action for the damages alleged in the counterclaim, the landlord could not set up the nonpayment of rent as a total defense. Hence, if the nonpayment of rent would not constitute a defense to the tenant's cause of action in an independent suit, how can it constitute a bar to his counterclaim in these proceedings.

For the rule is that the right to rent rests on an independent covenant. And would this not be a bad rule if it did not work both ways?

And I cannot subscribe to the landlord's second contention.

At no time is it mandatory for a defendant to set up his cause of action by way of counterclaim. For it might, if it desired, avail itself of an independent action. In this respect the provisions of the Civil Practice Act and the Municipal Court Code are permissive and not compulsory. (*Gay* v. *Riehmann M. Co.*, 53 App. Div. 507; *Greene* v. *Brenner*, 169 N. Y. Supp. 682, 683.)

Under sections 84 and 85 of the Municipal Court Code, and under section 1425 of the Civil Practice Act, a cause of action sounding in tort *may* be pleaded and tried as a counterclaim in a summary proceeding. *But it need not be.* And when the counterclaim is not interposed, how can a final order in the proceeding be *res adjudicata.*

" In a summary proceeding to dispossess a tenant for the nonpayment of rent, three questions are involved and are necessarily and finally determined in the landlord's favor if he succeeds. These are: *First*, that the relation of landlord and tenant exists, or, in other words, that the tenant holds under a valid lease; *second*, that the tenant has entered into possession, and *third*, that the tenant

has defaulted in the payment of rent. And in such a proceeding a judgment by default is as conclusive as one rendered after defense and litigation. * * * We have not overlooked the provisions of section 2244 of the Code of Civil Procedure which permits a tenant to set up in a dispossession proceeding ' any new matter constituting a legal or equitable defense or counterclaim ' to be ' established in like manner as though the claim for rent in such proceeding was the subject of an action.' This provision was evidently inserted for the benefit of the tenant, who before the adoption of this provision was confined to the simple issue as to whether or not he owed any rent. It is permissive and not mandatory." (*Meyerhoffer* v. *Baker*, 121 App. Div. 797, at pp. 798 and 799.)

" No rule can be laid down which is an invariable test in all cases. A good guide, however, is whether or not proof of either cause of action necessarily involves an inquiry concerning the same transaction. It is obvious that in this case no such thing would occur. Proof of plaintiff's cause of action would not involve the trespass set up in the counterclaim, and proof of the trespass would not involve the rent due. The rule set forth in the Civil Practice Act is a reciprocal one, and a counterclaim is not properly pleaded, if, in an independent action thereon, the plaintiff's cause of action could not be set up. If the defendant in this case had sued on the trespass, a counterclaim for rent would hardly be considered a proper counterclaim." (*O'Brien* v. *O'Neil*, 131 Misc. 673.)

The landlord's third point, to wit, that the cause of action pleaded in the tenant's answer cannot be interposed as a counterclaim in these proceedings, is not free from doubt.

The creature of the statute — summary proceedings — is controlled by the provisions of the statute. In what instances they may be brought; the essentials of the petition; what may be set up as an answer; and the matters of trial, final order and judgment are specifically regulated by the sections of the Civil Practice Act.

One looks to the Civil Practice Act for guidance, both in the matter of pleading and procedure. For while the Municipal Court Code endows this court with jurisdiction (Mun. Ct. Code, § 6), aside from the 1932 amendments, the provisions for the institution and maintenance of summary proceedings are conspicuous by their absence from the Municipal Court Code.

Section 2244 of the Code of Civil Procedure, which was the forerunner of section 1425 of the Civil Practice Act, was amended in 1893 so as to allow a tenant in a summary proceeding to interpose a legal or equitable counterclaim; but it did not permit the court to award the tenant an affirmative judgment on such counterclaim.

In 1920 the statute was further amended by granting to the court the authority to award such an affirmative judgment to a tenant on his counterclaim.

But it is to be noted that under section 1425 of the Civil Practice Act the only counterclaim that can be interposed and considered, and hence furnish the basis for an affirmative judgment, is such as could be interposed in the Supreme Court, in an action brought' to recover rent.

And except in so far as the Constitution prohibits, there appears a manifest legislative intent to attain uniformity in summary proceedings in all courts.

And to this end the Municipal Court is given substantially the same powers in these proceedings as that possessed by the Supreme Court. And even the $1,000 limit in the jurisdiction of the Municipal Court in ordinary actions has no application to summary proceedings. (*Matter of Byrne* v. *Padden*, 248 N. Y. 243.)

In this light one is inclined to the opinion that the rights, the remedy and the relief that a tenant may seek or secure in summary proceedings conducted in the Municipal Court are primarily controlled by the Civil Practice Act, not the Municipal Court Code.

" Section 86 of the Municipal Court Code, which limits the amount recoverable on a counterclaim to the sum of $1,000, is not applicable. The Municipal Court Code deals only with actions as distinguished from special proceedings except where the latter are specifically referred to. The power to entertain summary proceedings is conferred by subdivision 2 of section 6 of the Municipal Court Code, which provides that the court shall have jurisdiction of ' a summary proceeding authorized by the Code of Civil Procedure to recover possession of real property.' *The practice and procedure regulating summary proceedings are contained in the Code of Civil Procedure. The Municipal Court has a code of its own governing actions, but it does not affect summary proceedings.* As to those by virtue of subdivision 2 of section 6 of the Municipal Court Code, *the Code of Civil Procedure governs, not the Municipal Court Code.* Section 2244, like any other section dealing with summary proceedings, must be read into the Municipal Court Code." (Italics mine.) (*Broadway & 94th St., Inc.*, v. *C. & L. L. Co.*, 116 Misc. 440, at p. 443; revd. on other grounds, 119 id. 486.)

" A summary proceeding to remove a tenant is a special proceeding governed entirely by the statute." (*Handshke* v. *Loysen*, 203 App. Div. 21, at p. 22.)

Hence the query whether a tenant can procure relief by way of answer in the Municipal Court that he could not so procure were the proceedings in the Supreme Court.

Were this an action for rent brought in the Municipal Court, instead of summary proceedings, the writer would be relieved of any doubt on the point at issue. For the Municipal Court Code, in keeping with a modern judicial spirit, permits a complete disposition of all the legitimate differences between the parties.

" The provisions of MCC [Municipal Court Code] § 85 are much broader than those contained in the first sentence of CPA § 262, and in fact make applicable to counterclaims the same broad and sweeping rules which are made applicable to complaints by the MCC § 79, and permit the inclusion in the same pleading of any cause of action to which the court has jurisdiction, to the end that all matters of difference between the respective parties may, so far as practicable, be determined in one action. A counterclaim is not limited to a cause of action ' arising out of the transaction set forth in the complaint.' This is the practice in the Supreme Court, and formerly was the practice in this court. A counterclaim may now be interposed for ' any claims or causes of action ' mentioned in section 6 of this Code, and it is permissible to plead a counterclaim founded in tort to an action upon a contract." (Lauer's Municipal Court Practice and Forms [2d ed.], at pp. 335, 336.)

Prior to 1915 one had a ready precedent to warrant the dismissal of the counterclaim. Speaking of the counterclaim that might be interposed in summary proceedings, it has been stated: " It is manifest from the phraseology of this amendment that the Legislature did not intend to authorize in a summary proceeding any defense or counterclaim which, under the practice as regulated by other provisions of law, could not be pleaded as a defense or counterclaim in an action for rent. The rule of law on this point is not in harmony in all jurisdictions; but in this jurisdiction it was well settled before the enactment of that amendment that a counterclaim for damages caused either by negligence or by trespass was not proper in an action for rent, for the reason that such an action is on contract and the claim would be for tort not arising out of the same transaction or a transaction connected with the same subject." (*Franklin Bldg. Co.* v. *Finn*, 165 App. Div. 469, at p. 473.)

Before this court proceeds with the trial and determination of such a substantial counterclaim, is it not wise to dispel whatever uncertainty this question presents; especially under the particular circumstances before us?

To accomplish this purpose I am granting the landlord's motion to dismiss, solely on the ground that the counterclaim alleged cannot be interposed in these proceedings.

May the court at this time quote the eloquent plea of an erudite

judge: " These questions as to the propriety of a counterclaim will continue to arise until the profession has the courage to urge the enactment of provisions allowing parties to set up any cause of action that they may have against each other, leaving it to the court to say whether the causes of action can be tried together or should be separately tried." (See Civil Practice Act Notes, Report of Board of Statutory Consolidation (1915), note 17 (§ 19); English Practice Rules Ord. 18 N. 1, and Ord. 19, R. 3; Practice Act N. J. (1912) §§ 11, 12; U. S. Equity Practice, Rules 26, 30.) (*O'Brien* v. *O' Neil,* 131 Misc. 673.)

One is prompted to extend this judicial observation to the hope for the change of that idea of the administration of justice which clings to the theory of an inferior poor man's court. As Mr. Justice SHERMAN puts it, litigants in the Municipal Court of the City of New York are entitled to the same treatment and consideration as litigants in the Supreme Court, and others have expressed identical views.

" If we would take the same interest in seeing justice done in cases affecting the poor and obscure as in those in which are involved the rights of richer and important members of the community, we would have gone far toward inculcating respect for law in this country." (Address by Hon. Newton D. Baker, American Judicature Society, May, 1932.)

The practical fulfillment of these ideals demands the abolition of jurisdictional limitations that forbid the complete adjudication and disposition of a controversy; the elimination of all distinctions that may tend to confuse the issues or confound justice; and the establishment and maintenance of the fullest opportunities for the highest calibre of the administration of justice in all cases without regard to the amount of dollars and cents at stake. To this task the bench and bar should address their efforts.